the Judges pronounced their opinions.
Judge Coai.tkr.
In this case the appellant, who states that he has been about 20 years in possession of a tract of land,and has made valuable improvements thereon, seeks to be relieved from a judgment in ejectment, recovered against him by the appellee, who had obtained a prior patent therefor, and to vacate and annul that patent, as being fraudulently obtained, against his prior and superior equitable right.
The appellant makes three objections to the claim of the appellee ; 1st, that he, the appellant, had purchased a warrant from the office of Lord Fairfax for 400 acres, including the Rock Lick, &c. and which he had placed in the hands of Rigg, one of his lordship’s surveyors, who, although frequently pressed, refused and failed to survey until the warrant was out of date, when he informed the appellee thereof, who immediately obtained a warrant for the same land, and the bill therefore suggests fraud and combination between these parties 2d, that finding the tract contemplated by the above warrant, (viz. the Rock Lick Tract,) had already been granted, he purchased a warrant for some lands adjoining, and which he has had surveyed and patented ; but that the appellee had procured a plat to be made out for the same lands, although it was not the land called for by her warrant, (without any survey being actually made thereof,) upon which her elder patent issued, and to his astonishment and surprize, had brought her ejectment aforesaid, 8cc.
*158 The defendant, now appellee, denying the fraud, &c. contends that her warrant covers the land in controversy, and that the lands were surveyed, &cv
- The Chancellor directed three facts to be ascertained by an issue : — 1st, whether any fraud was practised by the appellee in procuring the warrant for the lands claimed by her; —:2d, whether a survey was ever made ; and, if so, 3d, whether it was made pursuant to the warrant, or on lands called for by it.
‘ The verdict of the jury found that no fraud was practised in obtaining the warrant; but said nothing as to the other points ; which the Judge thereupon directed should be enquired into by another jury ; but he subsequently discharged so much of the order as directed that enquiry, and dismissed the plaintiff’s bill.
This proceeding in the Chancery Court is now justified, because the appellant had failed to file his caveat to prevent the grant issuing to the appellee, and had not shewn that he was prevented by fraud or accident from pursuing that remedy : and whether that principle was the foundation of the decree in question, or not, we are now' stopped in the threshold of the cause ir, this court, on this ground. The first great enquiry therefore will be, whether the dismission of the bill can he justified on the ground of its containing no equity whereon to found the jurisdiction of the Chancery Court: and the correct mode, therefore, to test the principle contended for, will be to consider this case on the bill alone, as though a demurrer had been filed thereto for want of equity.
In determining the previous question, therefore, and which is the only one that has been argued, it will be proper to suppose as favourable a case as the appellant could possibly make out according to the pleadings ; to wit, that the appellee and surveyor had combined to defraud him in postponing his survey until his warrant had run out of date, so as to enable the appellee to slip in and procure a warrant; that then, finding they had embraced patent land in the warrant so procured, they returned a plat, (without having made a survey *159 thereof,) covering other lands, viz. those of the appellant; and upon which supposed survey, a grant had been obtained for lands not authorised by the warrant: — and then the question arises, whether a grant, consummating this tissue of frauds, is to prevail, because it is prior in date, over the grant to a fair purchaser, accompanied with long possession, and valuable improvements made, because that party (who it no where appears ever knew, until after their close, of these fraudulent proceedings,) did not file a caveat to arrest them.
It is said wo are bound, by the former decisions of this court, to affirm this decree on this ground, although it may work sxxch manifest injustice as that above stated.
My opinion is that no decision of this court, and that none of the known and acknowledged principles establishing the jurisdiction of courts of equity, compel me to give a decision in this case so contrary to my ideas of right and justice. I think the great current of decisions in this court, will bear me out in the opinion which I have formed on this previous question as applicable to this case; and I feel confident that the great and acknowledged principles of equity jui’isdiction, together with the positive statutes of the country, will be found also to accord with my ideas on this subject.
In considering this question, the decision in which will apply to many cases now pending, it must be borne in mind, that the party against whom the principle contended for is to be applied, is one who has proceeded regularly, under the acts of assembly, to procure his warrant, and make his location thereof, with sufficient precision to notify subsequent adventurers ; and that his prior right, thus fairly gained, has never been relinquished, forfeited or abandoned, and is a clear subsisting equitable claim, except so far as it may have been impaired by a subsequent adventurer, either know ■ ingly, and by actual fraud, as in this case, or carelessly, and so fraudently, interfering with it, and the failure of the par • ty to slate s.v,A firove that he was prevented by fraud or acci dent from filing a caveat.
Before I proceed to examine the decisions of this court, k may not be improper to take a short view of the mode of
*160 acquiring land in this country, and of the origin and nature of this proceeding by Caveat, as also of such g eneral principles of Eqqity Jurisdiction as may be applicable to the case.
The governor and council alone had the right (under the colonial government) to grant lands, (a) These grants were founded either on an order of council, or on importation rights duly proved, &c., or on the payment of composition money to the receiver general, &c. (b) and since our land law of 1779, on land warrants issued under its provisions. The party, thus entitled to acquire vacant land, made his entry with the surveyor of the county, designating the spot wished to be appropi'iated, and in cases in the Northern Neck the warrant itself designated the spot contracted for. From the year 1705, and perhaps earlier, until the present time, the law has been, “ that these entries shall stand good until the surveyor shall give notice that he is ready to survey, and the party shall fail to attend him, &c.” (c) By the doctrine contended for though, they would only stand good until a third person, on inferior rights, should obtain a patent for the same lands.
As to the origin and nature of the proceeding by Caveat to prevent such fraud on the person having superior right, I have carefully examined and can find no statute having the smallest reference thereto, until the act of 1779. It is nevertheless the fact that in the old General Court, which, from the earliest days until the revolution, consisted of the governor and council, and had general jurisdiction over all persons and things both ecclesiastic and civil, such a proceeding was common. I have examined many of the old records, and find that the proceedings were very loose and informal. A summons issued, but without any specification of the cause of Caveat, and the trial seems to have been on the depositions of witnesses, on which the court pronounced a decree or judgment, directing to whom the patent should issue, whether plaintiff or defendant. The proceedings seem altogether unknown to, and unsanctioned either by the rules of common law or chancery, and must have originated *161 altogether from the circumstance of the members of that court being also the persons authorised to grant lands, and who would probably have adopted them, to guard themselves against fraudulent practices, had they not also composed the most important judicial tribunal in the country. It, was a kind of preventive justice, similar to the Caveat in the Spiritual Courts of England to stop the probat of a will, See. (a) Its object doubtless was to stop the perpetration of fraud on the public, as well as on the individual, and not intended to oust the tribuna], instituting it, from their original chancery jurisdiction in favour of the honest purchaser, in case the. fraud should be consummated before it was discovered or arrested ; it was giving an additional, summary, preventive remedy ; that court, by its own mere act, without the interposition of the legislature, not being competent to oust the chancery side, or Chancery Courts, of any legitimate jurisdiction, by authorising another and more summary remedy.
When the executive and judiciary branches of the government were severed, and the new General Court (if I may use the expression) was organised by the act of October 1777, this matter was of course confided to that court, all causes, &c. depending in the former court being transferred to it. In May 1779, the process and proceedings in Caveats were regulated by law, and extended to cases not heretofore embraced by them, as will be hereafter noticed. The parties must both be considered as purchasers from the crown, or commonwealth, as the case may be, or, as in this case, from lord Fairfax, one prior, the other subsequent, but neither a complete purchaser until the patent issues.
The general rule of Equity, as I understand it, is, that no man shall proceed to get a legal title to lands to which another has a prior and superior equitable right, if he knows of such superior equity, but that he shall desist, so soon as he is informed thereof, and if he proceeds, after such knowledge, his legal title will not avail him in a Court of Chancery, but that the question there, notwithstanding such legal title so acquired, will be decided in favour of the person having superior equity; and that the notice, which shall thus *162 affect the party who gets the legal title, is either express 01: implied. I am not aware of any decision establishing it as a general doctrine, that a party thus acquiring a legal title to lands, to which he knows or is presumed to know that another has a superior equitable right, shall preclude that other from asserting such right, by his being conusant of the fraud about to be practised on him, (a) although I admit that such notice, under circumstances and after a lapse of time, Will be properly relied on as evidence, of abandonment. If these principles are correct, let us apply them to the case where a party shall procure a legal title from the commonwealth to lands to which another has a prior and superior equitable right; and see whether the law authorising a Caveat, or the decisions of this court on that law, have altered, or varied, the general doctrines above stated, and how far such alteration extends.
By the act of 1779, (b) there are two grounds on which a Caveat may be filed. The first where the person making the survey is about to defraud the commonwealth, either by not returning his survey within twelve months, but holding it up so as to defraud the commonwealth of revenue, or where the breadth of the plat shall not bear a proper proportion to the length, which would also operate a fraud on the commonwealth : any person not having a prior right to the land may interpose to prevent this fraud and imposition ;• but he must do it before the grant issues. This operates as a forfeiture of the rights of the party, and i-evests the title in the commonwealth in favour of the party filing the Caveat, who, on producing a certificate of new rights, Sec. shall have a grant for the land; but this cause of forfeiture must be taken- advantage of before the grant issues. This was held out as an encouragement to detect and punish frauds on the commonwealth'.
Another cause of Caveat is where a person shall obtain a survey of lands to which another has by law a' better'rights a person having such better right may in like manner enter a Caveat to prevent his obtaining a grant until the title can be determined, — -such Caveat expressing the nature of the *163 right on which the plaintiff therein claims the said land. The law then prescribes the method of suing out the Caveat, the process, &c. which is to be returned to the General Court then held in Williamsburg: on which process being returned , , executed, the court are to proceed to determine the right ol the cause in a summary way, without pleadings in writing, impannelling a jury for the finding of such facts as are material to the cause, and are not agreed on by the parties, &c. and shall thereupon give judgment, on which no appeal or writ of error shall be allowed. Although the jurisdiction in Caveats has since been extended to the County and Superior or Circuit Courts, and an appeal lies, yet it is fair in tracing* the original intention of the legislature to look at the state of the country, the evil, and the remedy originally contemplated and provided.
With respect to the first branch of the Caveat law, where a party having no prior right wishes to acquire land to which another has a prior right, on the ground that this other has forfeited such his right, by pursuing it in a way fraudulent to the commonwealth, he can only gain this preference over such prior right, by entering a 'Caveat stating this fraud, and thereby vacating the prior right, so as to let in his subsequent and new right. As to him, therefore, there is no remedy but by Caveat. It may be likened to a criminal prosecution in which the informer gets the penalty. This I un-, derstand to have been settled in the case of Staples v. Webster, October 1804.
With respect, though, to the second branch, the party having the prior and better right, which he is fairly and honestly proceeding to perfect, is about to be deprived of ibis right by one whose rights are subsequent and inferior. He either does or does not know of this effort to defraud him of his rights. Say that he does know, was it the intention of the legislature to compel him to prevent this injury to his rights by this particular remedy, or that, on failure, he should forfeit his right forever ?
Let us suppose a person in the County of Washington or Greenbrier, in the year 1779, has made an entry on lands,, *164 has settled thereon, and' is then defending the country ; another person, who resides in the interior of the country, enters and surveys the same lands, and returns his plat, knowing of the prior entry, but determining to get a legal preference ; was it the intention of the legislature that this frontier settler, because he knows of this fraud about to be perpetrated on him, shall leave his family exposed, and, whether he has the means of engaging in a law suit or not, repair to Williamsburg for this purpose, take his witnesses, and encounter every expence of prosecuting a suit at that distance ; a suit to be tried in a summary way, and in which no appeal lay’; he being bound to give his adversary notice of the nature of his claim, but to receive no specification in return ; in short, to subject his just rights to technical objections, which, on the trial, might dismiss his Caveat, subjecting him to great costs, and which, in a regular suit, brought to issue in the usual way, would have been avoided ; (hence the suit by' Caveat has always been considered more or less dangerous to the plaintiff, even if he has undoubtedly the best right, and he will, therefore, if possible, avoid being .plaintiff in it';) a suit, top, which he was perhaps. bound to institute within six, or, at farthest, nine months, (a) as the patent must issue to. his adversary within that time ; (thus, in effect, limiting a suit touching the realty to that short period ;) or that, in default of this, he shall be forever deprived of his just rights ? O.r was it the intention of the legislature that the party may file such Caveat, if he has it in his power, and finds it convenient so to do — to give him this additional remedy for the protection of his rights l
The above observation applies to the case where a party proceeds, openly, and with the knowledge of him who has the prior right, to enter and survey land which he knows is pot vacant, but before appropriated, and returns his survey immediately, of which the other also has notice, and where that other has no excuse for not filing a Caveat, except his inability to prosecute a Suit at so great a distance, his fear lest it should not be a safe remedy, and his belief that the legislature did not mean to compel him to take this remedy. *165 for the institution of which so short a time was necessarily-limited.
But suppose the party wishing to obtain a legal preference over a prior equitable title, does not give notice of his proceedings, is the prior claimant bound to take notice of them at all events ? and if he does not know of them, is he deprived of his rights because he cannot and does not pur* sue his remedy, and cannot prove his ignorance ? Was this the intention of the law ?
How stands this doctrine as to notice ?
By the act of 1779, every person having, a land warrant, &c. and wishing to locate it on waste and unappropriated land, may file it with the surveyor, &c. And he shall direct the location thereof so specially and precisely as that others may, with certainty, be able to locate the adjacent residuum, &c. If the surveyor refuses because of a prior location, &c. he shall shew it and give a copy, See. and which entry shall only become void after notice to survey as above stated.(a) The person then who makes the first entry must specify the land in such a way,that he who makes the subsequent entry can know, with reasonable certainty, what land was intended by the first locator to be appropriated, and he is not to enter for the same land, because it is not waste, but for the adjacent residuum, if he wishes land in that quarter. This prior entry, if not made as the law directs, is void, and gives no prior right; but if it is made as the law directs, it does give a prior right, and the subsequent locator must notice it. But suppose he, with this notice, is permitted by the surveyor, who is not bound to object, to enter also specially for the same land, is the prior locator bound 'to notice this sub» sequent proceeding ? He was bound to see that the land was vacant when he entered, and he has done so : is he also, bound to apply at the office from time to time, to see if any person is about to defraud him, and to violate the law by locating land not vacant ? Can he search at pleasure the entry book, unless he is about to make a new entry ? But if he can, how often is he to do it ? and for how long a time ? He has made his location for waste land: the surveyor has not been *166 able to survey it for years. Further time was given by law for making surveys,and so he has stood for ten years. He must travel 50 or 100 miles, (many'counties were, and now are, of that extent and greater,) to the surveyor’s office, how often ? If he goes but once a year, or even but once in 8 or 9 months, it won’t do ; for, within that space of time another may enter, survey,and get his title. Is an honest man bound to watch a thief in the night, and if the robbery be not detected before it is completed, is he too late ?
But suppose, (which is the case generally happening,) that the subsequent locator does not enter for the same land, or makes his entry so vague as to be illegal; or, if legal and special, to apply to the adjacent residuum, he surveys, not according to his entry, but so as to include the' land of the prior locator ; notice of this entry is no notice of an adverse claim: the survey is the first act by which he interferes with the prior right : how is this interference to be discovered by a party not present at the survey ? If he looks at the surveyor’s books, he finds a plat beginning at a notorious corner a mile from his land : that it runs from thence to a white oak, thence to a black oak, &c. See. ; but where are these latter objects ? — he knows not: he presumes they are on the adjacent residuum: or he may not even know where the beginning is, so as to form any possible conjecture what land is comprehended within these lines. But say, he has his suspicions. What is he to do ? If he can go and trace these lines, he will discover this attempt to defraud him ; and, to enable him to do so, he asks the surveyor for a copy of the plat s this the surveyor is bound to refuse, unless he produced a certificate that he has filed his caveat.(a)
Again : suppose, notwithstanding these difficulties, he has discovered that another has committed this fraud on him? he cannot caveat until that other returns his plat: this he holds up, though ; and the law, from year to year, gives him further time to return it t meantime, the surveyor has not found it convenient to notify him, having prior right to survey, so as to enable him to return his plat, he must ride l.ov *167 the register’s office every'six months, to see if his adversary’s plat has been returned, and after all, may be told, that it is not returned when it is. This subsequent locator in the mean time has held no conversation with him, so as to-throw him off his guard ; he has done nothing in fact which a man may not do in acquiring title to unpatented lands, except that he has located lands already appropriated by prior entry, or. has surveyed such lands by an entry not covering them, and is thus proceeding to acquire a title to lands to which he knows another has a better right: nay, he may subject the party to difficulties which the keenest pursuit could not overtake, by assigning his entry or survey, when th.e whole business will proceed in another name, unknown to the person having prior right who is thereby thrown out, and obliged to give up the vain pursuit. Did the law mean to prejudice persons having better right, or to protect them, by an additional-remedy ?
I humbly conceive the latter.
Where a party has two remedies for the same injury, one at law, and one in equity, if he elects his legal remedy, he must pursue it with proper diligence ; otherwise he shall not resort to a court of equity, unless he shews that, without his fault, he had not a fair and proper trial at law. So, if he is sued at law, he must defend himself there, as far as possible, and shall not make that defence in equity, unless he makes &, proper case for the interposition of that court.
The affirmative of the principle in question would seem to be predicated on the idea that this subsequent entry must be considered in the nature of a suit at law, against which the prior locator is bound to defend himself; but surely no two things can be more dissimilar. If he is sued at law, process is served ; a declaration gives him notice of the .ause of action, <kc. But here the subsequent entry is ’arely heard of, and never served on him ; and, if it was, in 11 cases where it was vague, or did not cover his land, it sould be no notice at all. These frauds, too, are generally .onducted with great secrecy and adroitness, and, as before hewn, the parly has every opportunity to keep out of view»
*168 The proceeding by caveat would appear to me to be more analogous to the summary remedy, given by the statute, of securities against their principals and co-securities ; by which, however, it has never been contended that the party had lost his remedy by action on the case, or bill in equity.
Let me now enquire, how far this, question has been concluded by the decisions of this court.
I think, until the case of Johnson vs. Brown,(a) this court has countenanced if not sanctioned the converse of the doctrine now contended for.
The case of Willcox vs. Galloway,(b) seems to establish no principle touching this question, but that a bill in equity will lie to repeal a patent surreptitiously obtained pending a caveat. . ' '
In the case of White vs. Jones,(c) the Chancellor seems to have been of opinion, that if the prior patent was obtained by fraud and collusion between the officer and patentee, it was void at law, in which court the party therefore had his remedy, as in the case of Wills vs. Hambleton in this court; mentioned in a note in 3 Tuck. Bl. 261, and therefore dismissed the bill. This court approve the decree, but not the reasons ; on the contrary, say that the plaintiff had, stated a fair and proper case for a court of equity ; to wit, that he was a purchaser against whom the defendant had unfairly and fraudulently obtained a legal preference; but that the plaintiff not having supported his bill, it was properly dismissed. In that case no caveat had been filed, nor any reason assigned for not taking’that remedy; yet this court would have sustained the bill had the allegations been proved.
In Jones vs. Williams, &c.(d) the plaintiff Williams had filed a caveat-, but his subpoena having miscarried, it was dimissed. Here he had elected his remedy, but failed to summon his witnesses, and, (for any thing that appears,) to move for a continuance of his suit at law : yet the court take up the question and decide it, as the general court would have done on the caveat, had the party been ready.
In Pickett v. Dowdall, (e) there was no Caveat, or reason for not filing ,one assigned, yet the court proceed to investí *169 gate the respective claims of the parties, and decide against the plaintiff, on the ground of superior equity in the defendant, and the evidence of forfeiture and abandonment arising from the lapse oftime, &c.
In Johnson v. Buffington, (a) there was also no Caveat ¡ yet the court decided in favour of the plaintiff on the ground of superior equity.
In Hunter v. Hall (b) there had been a Caveat by the defendant against the plaintiff, pending which, the defendant got a patent: his Caveat was dismissed for informality, there being no trial on the merits. This court go into the merits, and decide in his favour.
In the case of Johnson v. Brown, (c) the point now in controversy was neither made by the pleadings, nor suggested in argument. In fact, Brown had obtained his patent long before Johnson purchased the entry, so that he never could have filed a Caveat. The great objections to Johnson’s pretentions were, 1st, that his entry did not cover the land in controversy, if it was not altogether void for uncertainty; and the court, without deciding this last point, determined that it did not cover this land ; 2d, that the entry had been abandoned by the proprietor, and was no bar to the subsequent locator, even if it did cover the land. The court in that case also decided that, notwithstanding the act of assembly, a party is not bound to have his entry surveyed at all events, but may, as it regards a subsequent adventurer, abandon it, as he may any other equitable right, although the surveyor has not notified him to survey, and of which abandonment such subsequent locator may avail himself; and that here there was abundant evidence of that abandonment. The court, it is true, go on to speak of the necessity of a Caveat-, but I think, not only from the consideration that it was not a point made or argued, but from the very manner in which it is expi’essed, it must- be considered more in the nature of a dictum thrown out, than as a solemn adjudication determining a very important principle, as applicable to other cases, though not necessary to be decided in that 5 or as settling the extent to which that principle ought to be *170 carried. In the first clause of the opinion on this subject,’ the court seem to think that the party must suggest and prove that he was prevented by jraud or accident from filing a Caveat, but, wisely doubting whether this principle, in its-fullest extent, might not be of dangerous tendency, they go on to say, “ but to admit such bills in all cases without even suggesting an excuse for not having entered a Caveat, &c.” Let us suppose that Brown had been long in posse ssion of this land, and had made valuable improvements thereon, having a special entry therefor, but that Johnson, (as the court say,) searching for defects in his neighbour’s titles, hunting up . and purchasing stale and dormant claims, in order to dis- . turb that title, had bought up this entry, not covering Brown’s land, but had surveyed his land thereby., and obtained the oldest patent; would the court have established a principle that would have dismissed Brown’s bill, and all other bills in similar cases, even without a statement of his ignorance of these fraudulent proceedings by way of excuse for not Caveating, which he might have suggested, but, being a negative, could not have proved .? I verily believe they would notj 'b.ut, if they had, as it would have been a decision, not only on.a novel subject, but one of great importance, varying, in my opinion, the current of decisions, or the. universal understanding of the bar and country, giving, moreover, to an act of assembly, prescribing a new remedy, and having no negative or. excluding words, the operation to take away the original jurisdiction of the Chancery Courts over the subject, I should have been very happy to have seen the question reconsidered, as was lately done in the devastavit-question.-
The case of Depew v. Howard (a) falls within that description of cases where a party having two remedies elects one,, but neglects to prosecute it with due diligence. Depew had-filed a Caveat, “ which did not sufficiently appear (as in the case of Jones v. Williams) to have been dismissed through accident.” The court, however, even in this case, go on to contrast the rights of the parties, and determine that superior equity was with the defendant. ,
Considering, however, the case of Johnson v. Brown, (as *171 I have above stated,) in the nature of a dictum, and as laying down no positive or definite rule by which I am bound to dismiss the bill of a party, who, in addition to possession, &c. may have the only legal entry and survey covering the land, in favour of one who may have neither entry nor survey therefor, but who, to conceal her fraud, may have procured a plat to be returned without any actual survey made, I am for looking into the case, to see whether the decree of dismissing can be justified on any other ground than that already spoken of, and which it was agreed should be first argued and decided on.

Judge CABxLL.

The appellee having obtained the first patent, has the 1e~a1 title; and the question to be decided is whether the appellant has made out a case sufficient to en• title him to the interposition of a court of equity, for relid against that title. It becomes necessary, for this purpose, to ascertain and apply the principles heretofore decided by this court. I have examined, with great attention, all the cases which are supposed to have any bearing on the point, and I conceive it to have been clearly, repeatedly, and solemnly settled, that the legislature having established legal tribunals for d~eciding disputes prior to the patent, a Court of equity cannot interfere but under circumstances making such interposition just and proper. This point presented itself, and was expressly and solemnly decided in the cases d Johnson v. Brown, (a) and Depew v. Howard. (b) It is true that, in both of these cases, the opinion of the Court on i~he merits was also in favor of the person having the legal title. But that does not impair the solemnity or weight of the decision on the point of jurisdiction. Many points may arise in the same cause, and it is competent to the Court, and useful to the public to decide them all. The question of jurisdiction clearly arose in both cases, and was the principal point on which they were decided. And in Johnson v. Brown, the court expressly declares, that the merits were examined merely to gratify the party. But the principle is inot of modern date. It seems to have governed White xu *172 Jones j (a) for White's title was such that, over and above the fraud charged on Jones, he would have succeeded on the merits had he prosecuted a caveat ¡ but not proving the fraud charged in the bill, and assigning no . reason why he had not availed, himself of the other matters by a caveat, his bill was dismissed : although this is not expressed, it is presumed to have been the ground of the decision, for it would be difficult to account for it on any othei\ . The principle was expressly recognized by the court in Jones v. Williams ;(b) for it is stated that the merits might, have been heard and decided on the trial of a caveat; that'a caveat was filed by Williams, but had been dismissed in consequence of an accident ; and that “ therefore” the court would consider the case as the general court would have done on a hearing of the caveat; thus placing the interposition of the court of equity not on the ground of its having a concurrent jurisdiction with the court of law, but on the equitable circumstance of the accidental dismission of the caveat. The same principle is again adverted to by Judge Pendleton in delivering his opinion in Pickett v. Dowdall.(c) Dowdall claimed'by a younger patent, but the oldest entry; and contended that his patent should have relation back to the warrant, which was the inception of his title, so as to destroy the intervening right of the Picketts. Judge Pendleton denied the application of the doctrine of relation to such a case ; but, admitting its application, “ there can be no question” (said he) “ but that Dowdall might have availed himself of it at law, and could not require the interference of a court of equity.” While this principle has been so often confirmed, I have been unable to find a single case in which this court has acted in opposition to it. Wilcox v. Calloway,(d) and White v. Jones,(e) only shew that fraud in procuring a patent is a circumstance which will make the interposition of equity just and proper. On this ground of fraud, I shall presently have occasion to speak more at large. In Johnson v. Buffington(f) the court, as I conceive, founded its decision on the particular situation of the lands in controversy, (lying in the Northern Neck) under certain acts'of assembly upon the subject. *173 In Hunter v. Hall,(a) the court refused, on the merits, to grant relief, being of opinion that the equity of the case was with the legal title. The question of jurisdiction seems not to have been stirred ; and it Is possible, that this case might have been taken out of the general rule, by the circumstance of Hunter's patent having been obtained, pending the caveat, which he had filed against Hall, the latter having filed no cross-caveat. It is said that the practice of the country, and the opinions of the bar, in that part of the state where most questions of this sort arise, are at variance with the principle now contended for. If mischiefs have proceeded from this misapprehension of the law, although the court may deplore, it has no power to redress them. '
It being then settled, as I conceive, that Courts of Chance* ry will not interfere, but under circumstances which render the interposition of equity just and. proper, it now becomes necessary to ascertain those circumstances,.
Fraudulent practices in procuring the patent will give jurisdiction; and, as I conceive, even in those cases where the party had knowledge of the fraud, and might have availed himself of it on the trial of a caveat, but failed to do so, without even suggesting a reason for the failure. I think so, because fraud constitutes one of the ancient, established, and most essential grounds of the jurisdiction of courts of equity. And I conceive this ancient and established jurisdiction is not to be taken away by mere implication; by the establishment of a legal tribunal, to which jurisdiction is given, but not in terms of exclusion. In no other case of fraud is the jurisdiction of a court of equity taken away by shewing that a court of law has concurrent jurisdiction. Why should this case constitute an exception ? In the case of Hambleton, &c. v. Wells,(b) it was decided, that fraud in procuring a patent might be given in evidence to vacate that patent, even on the trial of an ejectment. In Witherington v. M'Donald, It is stated that the case of Hambleton v. Wells had not been considered as having settled the law, as it was the only case on the point, and the court nearly equally divided ; but I perceive nothing that can excite a doubt as to *174 the -right ■ of a court of equity to interfere in sucha case. White v. Jones, 1 Wash. 116, seems conclusive. In that case. Where there was an allegation of fraud, the chancellor had refused relief on the ground that the fraud vacated the patent, and that, the patent being null and void, the party-might have had redress at law. But this court, although it affirmed the decree of the Chancellor in dismissing the bill, did it on a very different ground ; viz. that although the fraud was'charged, it was not proved ; expressly declaring, however, that where fraud is suggested and proved, courts of equity have concurrent jurisdiction, and can afford the most ample and adequate redress. > -
It is also certain that, if it shall appear that fraud or accident shall have prevented the prosecution of a caveat, equity will grant relief.
But how far the want of actual notice or information of -the entry or survey of the opposite party will excuse the omission to file a caveat, is a point which, as far as I can dis? cover* has never yet been made nor decided in this court, The expressions in Johnson vs. Brown, that there “ would be no ground for a bill to set aside the patent, unless it had been suggested and proved that he was prevented by fraud or accident from prosecuting a caveat,” are- certainly very strong. But it was not necessary in that case, and therefore,.! presume, was not the object of the court, to determine all the causes which would justify a resort to a court of equity. The point really before the .court was,'whether Johnson, Who had alleged no fraud, and had suggested ño cause whatever for not having prosécuted a caveat, should have relief. And I consider that to have been the only point decided in that case, so far as it applies to the present, It is very certain that a man making an entry is bound, at his peril, to take notice of all prior legal- locations ; for his warrant authorizes him to locate it on waste and unappropriated lands only. But the entry being once fairly and legally made on waste and unappropriated lands,- how far its owner is necessarily presumed to have notice of subsequent conflicting entries or surveys, is a question of great import». *175 smce, which, as I before observed, does not appear to have have been settled. I am not sensible that this point arises in this case ; but as it has been mentioned in the argument, I will give my impressions upon it. The object of the act of assembly, in requiring locations to be entered in a book to be kept by the surveyor, is to give notice to subsequent locators, so as to enable them to locate other warrants on the adjacent residuum, and not to compel a prior locator to attend the office from time to time, to see if others are making efforts to deprive him of the incipient title which he 1ml acquired by his location. Others are bound by the notice which bis prior location affords, not to disturb his right. Why shall he suspect them of an intention to invade it ? If he has no reason to suspect it, why shall he be compelled to keep watch at the surveyor’s office, for guarding against it ? And if he is not compelled to inspect the surveyor’s office, how shall he be presumed necessarily to have notice of what passes there ? These remarks apply as well to surveys as to locations. Besides, these subsequent locations are frequently made so vaguely, that, even when seen and inspected, they afford no evidence of the lands which they are meant to cover-They therefore can afford no notice that any conflicting claim is to grow out of them, and, of course, can impose no obligation to guard against them. On the other hand, a subsequent location may be made with such precision, as clearly to shew, that, if properly surveyed, it would not interfere with a prior location in the same neighbourhood. This is much stronger than the case of a vague location ; for the information it contains is directly calculated to throw the party off his guard. The owner of the prior location, in such a case, availing himself, as he has a right to do, of the time allowed by law to make his survey, and knowing' that no person has a right to interfere with him, reposes in imaginary safety. The owner of the subsequent location proceeds at once to make the survey, in his absence, and without the knowledge of the owner of the prior location ; and, abandoning, by mistake or design, the calls of his own entry, encroaches upwn those of the other; and hurrying the survey to the re *176 gister’s office, procures the patent ■ his adversary remaining, in the mean time, in actual ignorance of these transactions. In such a case I should suppose it would be the delight of a- court of equity to grant relief, unless restrained by positive law. ,1 perceive nothing in the expressions or policy of the act of assembly, regulating the trials of caveats in the courts of law, which forbids the interference of equity in such a case as that just stated. The act of assembly, it is true, establishes a legal tribunal for the determination of disputes before the patent; but there are no words excluding the jurisdiction which Courts of Chancery may exercise in equitable considerations. On the contrary, the words are permissive only, in relation to the jurisdiction Of the court of law. But equity itself, pursuing its own principles, will refuse to interfere in all cases, (except where fraud is involved,) unless the party shews a good reason for having failed to go before the legal tribunal. Its refusal, however, is founded, not bn any particular regard to the words or policy of the act of assembly, but upon the general principle regulating Courts of„Chancery; viz. that equity never does grant relief to a man who had a plain and adequate redress at law, unless he shews some good reason why he did not avail himself of that redress. It is admitted by all, that if a man be prevented by fraud or accident from prosecuting a caveat, eq’uity will interfere. I cannot perceive any difference in principle between such cases and that where aman is prevented from filing a caveat by total ignorance of any adversary claim. I do not contend that ignorance of the law will ever avail a man; but I do conceive that ignorance of an opposing claim, in a court of equity, will excuse a man, having better title, for not having taken measures to defeat that claim; at least in those cases where the law does not presume him to have notice. And the law cannot presume a man to have notice of that, of which the policy of the law has not made it his duty to take notice. But how is a man to avail himself of his ignorance in such cases ? not by proving it; for, being a negative, that is impossible. He must be allowed to suggest it; and that suggestion must be received, *177 lili disproved by proving knowledge upon him. Nor do I conceive that this opinion is opposed by any thing in the cases heretofore decided in this court. Where the circumstance is susceptible of proof, proof will be required ; but where, from its nature, it is not susceptible of proof, the suggestion will be sufficient till repelled by testimony. If it be asked, why hold a man to the necessity of averring that which it is not necessary, nor even possible for him to prove ? I answer, that he may have had notice; and unless he avers the contrary, his bill does not, even on its own face, present a case fit for equitable interference, and would, therefore, be liable to be dismissed.
To apply these principles to the case now before us. If we consider this bill as on a demurrer, I conceive it makes a good case for the interposition of equity, for it charges a gross fraud on the defendant. But I perceive no other ground which would give the court jurisdiction ; for the complainant suggests no reason, not even want of notice, why he did not pursue his legal remedy.
If we go beyond the bill, and, with the Chancellor, examine the case on its merits, it seems a clear one in favour of the appellee. The jury have found that there was no fraud In obtaining the warrant; and the,proofs in the cause are abundant to shew that the survey was actually made, and in strict pursuance of the warrant. In this case, then, the appellee has both law and equity on her side, and the decree ought to be affirmed.
Judge Fleming.
In order to save time, I am requested to report the following opinion, as that of the two senior members of the court, present; and I am authorized by Judge Roane, to say that he perfectly accords with the opinion, as now to be delivered.
After the solemn resolution of this court upon the question of jurisdiction, rendered in the case of Johnson v. Brown, which was founded upon former decisions, and particularly upon that in the case of Jones v. Williams; after the accession to this decision by Judge Tucker in the case of Depew *178 v. Howard, on the ground of its being the established law of the land ; after this rule of property, sanctioned by the opinions of all the successive judges of this court, to the number of perhaps seven or eight, prior to the present organization thereof, had been promulgated as the law of the land 5 and hundreds of our citizens may have regulated their transactions thereby; it might have been reasonably supposed, that the point, at this day, had been at rest.
If there were even error in the opinion of all these judges ; if the solemn decisions of this court, upon the point, were even replete with error ; that error, upon general principles, had better be acquiesced in, than corrected at this late day ; and, especially, as all the cases probably affected thereby, are gradually passing out of existence. But no such error has been committed ; and we owe that deference to the decisions of former times, that we ought not to suppose that those decisions were rendered without due consideration. We ought rather to admit the possibility of being ourselves mistaken.
On authority, therefore, the question is irrevocably settled : and on principle also, we think it is rightly settled.
The point seems to be, as thus established, that, although a party may be let into a court of equity, on grounds which lie could not have used on the trial of a caveat, and which, in fact, make another case ; (in reference to that which he might have availed himself of on such trial;) or upon a case suggesting and proving that he was prevented by fraud'or accident from prosecuting his caveat ; he is not to be sustained in the court of equity, on such grounds as were, or might have been brought forward on the trial of the caveat.
The legislature of this commonwealth having offered for sale a large tract of vacant country, it was important to have the samé settled, and the titles thereto quieted, as soon as possible. This is evident, both from the general tenor o the act, from the provision therein for the speedy decisio of the whole law and equity of the case, on the trial of th caveat, and from the interdiction therein of the appellate jurisdiction of our courts, by declaring the decision of the ge *179 «eral court to be final. Every argument founded on a policy which goes to arrest the power of the revising tribunals on this subject, (a power in-all other civil cases deemed so necessary and important) would equally go to exclude a merely concurrent jurisdiction. There is, on the contrary, less hardship in the latter case than the former; it being entirely just and proper to confine the trial of the same case to one, instead of various and concurrent jurisdictions. That jurisdiction is the court, constituted by the act for the trial of the caveat ¡ and which, quoad such trials, is a court of equity ¡ and one constituted so as to proceed with great celerity and dispatch. It would have frustrated all the views of the legislature in this particular, to have let in the jurisdiction of the ordinary courts of equity, which, from the delays unavoidably incident to their proceedings, would have protracted the settlement of these controversies to a great distance of time.
As it was the policy of the act to constitute a peculiar court of equity for the trial of the titles, antecedent to the emanation of the patent, so it was important in relation to this extensive country, to act by general rules, and establish a general criterion, as to notice. The propriety of this policy has often been affirmed by this court, even in relation to the territory offered for sale by Lord Fairfax in the Northern Neck. The provision of the act now in question meant to prevent and cut up the numberless doubts and disputes, as to notice, or no notice ; and to establish a general criterion. It is precisely analogous to the provisions of the registration acts, which, for similar purposes, and to prevent innúmera-, ble frauds and perjuries, do not permit any person to aver the want of notice of a deed which is duly registered. The notice, principally established by the act, is the entry in the surveyor’s book, which is open and accessible to all. The entry, when followed up by a survey, which the law also provides shall be made shortly thereafter, affords complete notice of the claim thereby set up, and operates as an invitation to persons having prior pretensions, to bring them forward by way of caveat. Of this survey, it is not competent to adjacent adventurers to aver an ignorance ; both on ac, *180 count of its notoriety as an act in fiáis, and the survey being required to be plainly marked and bounded; and because all concerned in these entries and surveys are supposed to be attending to their interests, in and about the neighbourhood. The act did not contemplate a negligence in this respect on the part .of the adventurers ; and if a solitary case of hardship should be found to exist, in relation to this particular, it is better that it should be endured.by the individual, than the general policy of the legislature be defeated. Without an unpardonable negligence, no inconvenience can arise, as to a survey which pursues the entry : and even with respect to one made at another place, the notorious act, of making it on the land claimed by another, is sufficient' to give him notice thereof; especially as adventurers are supposed to be attentive to their titles as aforesaid, from the first inception thereof. If, however, a case of this sort should be said to give jurisdiction to a court of equity, that jurisdiction has already been afforded in the caveat court; and a reasonable time allowed to gain the necessary information, by means of the survey being required to be six months in the office ¡ another link in the chain of circumstances calculated and intended to give the necessary notice.
If, however, (after all,) a particular case of hardship should still be found to exist, it must yield to the general policy of the' statute, which acts by general rules, and adopts, of necessity, a general criterion on this subject. AH these general regulations and restrictions, therefore, while they are wel} calculated to advance the views of the legislature, produce no injury to any vigilant and attentive individual. If that legislatui’e had a right to abridge and destroy the appellate jurisdiction in relation to caveats, to answer the important pui’poses before mentioned, it had an equal right to confine the parties to otie jurisdiction, and to limit the point of time, within which a ground of equity is to be asserted..
On principle, therefore, as well as authority, we think the decision in Johnson v. Brown was rightly settled.
This view of the subject is predicated upon the provision of the land law, and contemplates that part of the common *181 wealth of Virginia not comprehended within the Northern Neck. It has been thought best to meet the question in full, and endeavour to put it at rest in future. That view, however, equally applies to the territory of the Northern Neck, since the act of 1785, which places thereafter proceedings, as to entering and acquiring lands therein, upon the common footing. It is supposed, also, equally to apply to the general rules and regulations, as established by Lord Fairfax, prior to the passing of that act. It applies emphatically to the case before us, in which, under the act of 1785, the survey had Iain a considerable time in the office, prior to the emanation of the grant; which grant was not, however, caveated by the appellant; although a particular as well as an implied notice of the appellee’s pretensions, is fixed upon him by the evidence.
On these grounds we are of opinion that the decree should be affirmed ; and it is affirmed accordingly.

 See 2 Hen. Statutes at large, 253.

 1 Hen. Statutes at large, 274 ; 2 do. 95; 3 do. 304.

 3 Hen. Statutes at large, 330.

 3 Tuck. Bl« app. B.34.

Fonbl. 330, note'

;Ch.Eev.p.

 S Call, 499.

’Ch. Rev.. P*94> 95‘

 Rev. (pode, 1st vol. p. 145, sect. 29.

 S Call, 259.

 1 Wash. 40.

 1 Wash. 116.

 1 Wash. 230.

 2 Wash. 106.

3Wash. 116.

 1 Call, 306.

 3 Call, 259.

 1 Munf. 293.

 3 C~11 259.

 1 JJ1~~ 293.

 X Wash, 116.

 X Wash. 230.

 2 Wash. X06. '

 X Wash 38

 XX6. •

 2 JTasA.

 1 Call, 206.

 II. and 307, in a note.