Bb.oo.kenbrough, J.
If this was a controversy between the appellants and the original grantees, the Bra-dens, I should be strongly inclined to think that the appellants would not be entitled to relief. Donnell was a resident of New Jersey, and Freston the surveyor of Washington county was his agent. It is not perhaps clearly ascertained how far that agency extended; but from the evidence of one of the witnesses, and from a question which Preston put to him, it ma.y bo fairly inferred, that Donnell either lodged his warrants with Preston to make locations for him, or at least, that Donnell having made the locations, he made Preston his agent for making surveys on the entries, and carrying *396 the surveys into grant. . The entry made by or for Don- < neM f°r the 600 acre tract, bears date the 29th April 1783 ; no survey was made on it till 1798, and no grant issued thereon till 1800. Meanwhile, the Bradens caused their survey for 330 acres to be made in March 1790; thisn survey was. made by an assistant of Preston, and was placed iri the book of surveys; and Preston must be presumed to have had full notice of this survey, thus recorded on his own book. If it interfered with the land which Donnell had located seven years before, why did he not, as the agent of Donnell, cause a caveat to be entered against the emanation of a grant ? The plaintiffs allege no reason in their bill, why a caveat was not entered, nor do they allege or prove any actual fraud practised by the Bradens in obtaining their patent of 1793. According to the authority of Noland v. Cromwell, 4 Munf. 155. and the subsequent cases, I apprehend they shew no ground for relief from a court of equity. Again, more than twenty-five years elapsed from the date of Braden’s survey to the exhibition of the bill, whose object is to repeal the grant founded on that survey. If the plaintiffs had had the legal title to the land, they could not have maintained ejectment for it against the tenants in possession, after such a length of time; and on analogous principles, they ought not, I think, to be allowed to set up an equitable right ac-, quired thirty-two years before the suit brought, against the legal title of the grantees.
■ Such are my strong impressions. But whether they are correct or not, I am of opinion that King, the purchaser from the grantees, without notice of the latent equity of Donnell, ought to be protected in his purchase; and that that defence may be made by answer as well as by plea. The heirs of King do rely on that defence, in their answers.
I am for affirming the decree.
*397 Carr, J.
Upon a careful examination of this record, the plaintiffs’ cause wore an unfavourable aspect to my mind; and I doubted very much whether they ought to succeed in setting aside the older grant to the Bradens. The circumstances which produced this impression, were—1. The long lapse of time between Donnell's entry and his survey, the first in 1783, the last in 1798— fifteen years; and then two years more before he obtained his grant. 2. The suspicion raised by the proofs, that the surveyor of the county was interested in the entry and survey. 3. The bill is filed by two plaintiffs, Donnell and Preston, as joint owners of the 600 acres, when the deed produced to support the claim is a deed by which Donnell conveys the whole land to Preston. 4. The facts that in 1790 the plaintiff Preston, as surveyor of the county, surveyed 330 acres of the tract before entered with him by Donnell, for the Bradens, without any entry made by them (as he now asserts); which survey was carried into grant in 1793, and the land sold by the Bradens to King in 1794, and the deed put on record immediately; 'and in 1814 (twenty years after), this 600 acres, including the 330 sold to King, is bought by Preston of Donnell. These facts, I sa,y, produced an unfavourable impression on my mind against the plaintiffs’ claim : but still I doubted strongly, whether the ground taken by the chancellor could be supported. In this state of suspense, a remark of my brother Tucker turned my attention to another consideration : it was this, that if the representatives of King had pleaded that they were purchasers without notice, he should have thought them protected, unless actual notice was proved, because a purchaser from an elder grantee ought not to be affected with constructive notice of priority of entry. Returning to the examination of the record 1 found, not indeed a plea, but an allegation in the answer, that the 330 acres of land granted to the Bradens was sold and conveyed by them to King, *398 he havins; no notice of the claim of the plaintiffs. Here is a positive allegation oí a purchase and conveyance lor a valuable consideration without notice, twenty years prior to the acquisition of title by the plaintiff Preston. And I find by examination of the authorities, that this is a defence which may be made by answer, as well as plea; indeed, a plea is an answer in another form, putting the defence upon a particular point, to save expense and delay. Thus, in Mitf. Plead. 177. it is said—“When an objection to a bill is not apparent on the bill itself, if the defendant means to taire advantage of it, he ought to shew to the court the matter which creates the objection, either by answer or by plea, which has been defined a special answer shewing and relying upon one or more things, as a cause why the suit should be either dismissed, delayed or barredfor which Pract. Reg. 273. is cited. In Roche v. Morgell, 2 Scho. & Lef. 721. lord Redesdale remarked that a plea was a special answer to a bill, differing in this from an answer in the common form, as it demanded the judgment of the court, in the first instance, whether the special matter urged by it did not debar the plaintiff from his title to that answer which the bill required. So, Beames in his Pleas in Equity, p. 253. after treating at large on the plea of purchaser without notice, and pointing out the niceties of the plea, says—“ It would seem that the difficulties of the plea of purchaser for valuable consideration without notice, as a mode of defence, may be avoided by adopting the more common mode of defence by way of answer; the proposition, that if a defendant answer he must answer fully, having for one of its excepted cases, that of a purchaser for valuable consideration without noticeciting Stephens v. Gaule, 2 Vern. 701. Jerrard v. Saunders, 2 Ves. jun. 454. Rowe v. Teed, 15 Ves. 372. 378. 1 Ball & Beatt. 325. 2 Id. 303. I have examined the three first of these cases, and find them full to the point; making the defence of purcha *399 ser without notice in the answer, and the defence in that form expressly held good by the court. The same has been our course too; 2 Rob. Pract. 807. and in addition to the cases there cited, Doswell v. Buchanan, 3 Leigh 365. Here, then, is not only a good but a highly favoured defence, well made; and in the whole record there is not a scintilla of evidence to fix even a suspicion of actual notice on King. Nor is it a case for constructive notice, as no one can suppose it the duty of a purchaser, who sees his vendor with the grant of the commonwealth in his hands, to search the surveyor’s office, to ascertain whether there may not be in existence an inchoate equitable title to the same land. Upon this ground, I am clearly of opinion that the decree should be affirmed.