THE STATE *v.* HOLLOWAY and Others.

Where a person designedly or knowingly causes a false impression to be entertained by another, who is thereby drawn into a contract injurious to his own rights or interest, it is a case of fraud in which equity will relieve.

Parol evidence of the understanding of the parties to a mortgage, at the time of its execution, that it should not prejudice the priority of lien of a subsequent mortgage then about to be taken, is admissible to show the extent of the notice which the first mortgagee had of the pending negotiation as to the second mortgage.

If a defendant in chancery do not profess to answer from any knowledge he has of the matter in controversy, evidence equivalent to that of two witnesses is not necessary to overcome his denial.

Agents are generally competent witnesses : they are so in many cases *ex necessitate,* though they may be interested.

The party objecting to the admission of a witness must show his incompetency.

Objections to the admission of a witness are not to be favoured, when made after it is too late to restore his competency by a release.

An objection of lapse of time to showing fraud in a mortgage should be made in the Court below.

ERROR to the *Tippecanoe* Circuit Court.

PERKINS, J.—The state of *Indiana* filed her bill in the *Tippecanoe* Circuit Court against *John Holloway* and others, praying the foreclosure of a mortgage, and also priority in its payment over a mortgage on the same premises given to one *John Hill,* since deceased. The mortgages are both set out in the bill: that to the state is executed by *John Holloway* and wife; that to *Hill* by *John Holloway* alone. Those entitled by different modes to the property of *Hill,* after payment of his debts, are made co-defendants. *Holloway* and wife made default. The other defendants answered, disclaiming any knowledge of the matters charged in the bill except so far as they appeared by the exhibits, making general denials, and demanding proof.

The Circuit Court, on the final hearing of the cause, de-

creed the foreclosure of the state's mortgage, but refused the priority asked, which is the error complained of.

The facts, as shown by the exhibits and depositions, and about which there is no dispute, are as follows: On or about the 3d of *April*, 1837, the above-named *John Holloway* applied to *W. M. Jenners*, then agent of the state for loaning the surplus revenue in *Tippecanoe* county, for 400 dollars of that fund, proposing to secure its repayment by a mortgage on certain premises designated. The agent, *Jenners*, before deciding upon the application, called upon *John Hill*, who was a brother-in-law, a late partner in business with, and then a large creditor of *Holloway*, and informed him in regard to it, pointed out to him the property on which the proposed mortgage was to be given to secure its payment, and inquired of him whether he had any claim upon it, and whether *Holloway* was its real owner. *Hill's* reply was that he had no lien or claim upon the property, and that *Holloway* was its absolute owner. *Jenners* then agreed to make the loan, drew up the mortgage in question, which was signed in his office on the said 3d of *April* by *Holloway*, and taken by him to obtain the signature and acknowledgment of his wife thereto. On the 11th of *April*, eight days after *Holloway* signed the mortgage to the state, but before it was acknowledged or delivered to *Jenners*, *Hill*, with express notice that the negotiation for the loan and mortgage between *Jenners* and *Holloway* was still in progress, but incomplete, obtained from the latter a mortgage for near 5,000 dollars, being more than the value of his entire property, upon the same land he was mortgaging to the state, including, also, all his other real property. No notice was given to *Jenners*, the complainant's agent, of the taking of this mortgage, *though he* was a resident of the same town and in almost daily intercourse with *Hill*; nor did *Hill* get it recorded till after *Holloway* had obtained the 400 dollars of surplus revenue, notwithstanding he resided in the same town where the recorder's office was kept. The mortgage to the state was not recorded in ninety days from its date, nor till after *Hill's*, while the latter was put upon record in legal time, and a few days subsequent to the loan to *Holloway*.

The first and main question to be examined is, whether the

foregoing facts establish a fraud upon the state, the com-
plainant, on the part of *Hill* in procuring his mortgage from
*Holloway*, and failing to notify her agent of the fact before
she had parted with her money.

The books furnish us with no general exclusive definition of what constitutes fraud; and where precedents fail in determining a particular case, it is, to a great extent, left to the conscience of the chancellor to decide. 1 Hov. on Frauds, 13. In coming to a conclusion, however, in the case before us, it will not be necessary that we should pass the bounds of principles well established by adjudged cases. Nor shall we find it necessary to determine the question whether *Hill* was not in fact a mortgagee with notice, subsequent to the state.

It is a well settled principle in equity, " that if a first mortgagee stand by without disclosing his own incumbrance, while a second mortgagee advances his money under the persuasion that the estate mortgaged is liable for no prior debt, the first mortgagee, in just recompence of his fraudulent concealment, will be postponed to the second. And the rule as well as reason of decision is the same, where the mortgagor has gained any other advantage in subsequent dealings respecting the mortgaged estate, by the connivance of the mortgagee." 2 Hov. on Frauds, 197.

In the present case, it is clear to us that the first mortgagee (if *Hill* be such) did stand by without disclosing his own incumbrance on the estate, while a second mortgagee advanced her money under the persuasion that the estate was liable for no prior debt, and was known to be acting under that persuasion by the first mortgagee so standing by. It is true, it is not shown that *Hill* was present when the money was paid and the mortgage delivered, nor is it necessary that it should be. The term "standing by" is used in law as implying knowledge under such circumstances as render it the duty of the possessor to communicate it, and it is such knowledge, and not the mere fact of "standing by," that lays the foundation of responsibility. In this case, *Hill* not only had full knowledge of the circumstances under which the state was parting with her money, but he also knew she was doing it on the faith of representations made by him. She had, in fact, been misled by the conduct of

May Term,
1846.

THE STATE
v.
HOLLOWAY.

*Hill*, in making the advancement she did. It makes a much stronger case of fraud than simple knowledge would have rendered it, and shows a state of facts which made it the duty of *Hill* to inform *Jenners* of his mortgage. In *Noland* v. *Cromwell*, 4 Munf. 161, the Court state the general rule in equity to be, "That no man shall proceed to get a legal title to lands to which another has a prior and superior equitable right, if he knows of such superior equity, but that he shall desist so soon as he is informed thereof; and if he proceeds after such knowledge, his legal title will not avail him in a Court of Chancery" against the person having the superior equity. If the above be the correct rule, it seems to us it also will embrace this case. We think the state had a prior equity involved here in the mortgaged premises, that that equity was known to *Hill*, and that he had no right to defeat it by obtaining to himself the legal title. See, also, *Webster* v. *Wise et al.* 1 Paige, 319, and *Wendell* v. *Van Renselaer*, 1 Johns. Ch. R. 344. The mortgagees in this case did not stand to each other in the relation of common creditors, each seeking to obtain the earliest security for an outstanding debt. The state was making a new advancement of money, extending a new credit, the benefit of which *Hill* might reap, and of the security for which he was secretly attempting to deprive the new creditor.

Our opinion is that the facts of this case make out a fraud remediable in a Court of equity.

The Circuit Court also committed an error in suppressing a part of the deposition of *John Holloway*, which formed a portion of the complainant's evidence in the cause. *Holloway* swore that when *Hill* called on him to obtain the mortgage which the state is seeking to postpone, he informed him that he had effected a loan from the state and was about giving a mortgage on a part of his land to secure it, and he wished him, *Hill*, to take his mortgage on the remainder; that *Hill*, however, insisted upon a mortgage covering the whole, which was finally executed upon the understanding between them that it should not prejudice the priority of the state's lien. This portion of the deposition was suppressed as being parol evidence contradicting the terms of the written conveyance. Without deciding that it was competent

May Term, 1846.

Hill
v.
Holloway.

to give parol proof of such an agreement with a view to its controlling the question of priority between the mortgages, it was clearly admissible to show the extent of the notice *Hill* had of the state of the negotiation between the state and *Holloway*, and as tending to show fraud in the obtainment of his mortgage. *Jackson* v. *Frost*, 6 Johns. 135.—*Loker* v. *Haynes*, 11 Mass. 498.—*Hill* v. *Payson et al.* 3 *id.* 559.

The counsel for the defendants makes the objection in this Court, though it was not raised in the Court below, that *Jenners*, the agent who loaned the money, and whose deposition constituted a part of the complainant's evidence, is an incompetent witness, and insists that his deposition must be excluded; and that, in that event, the decision of the Circuit Court must be affirmed for the want of sufficient proof on the part of the complainant, she having the testimony of but one other witness.

Did it appear to us that *Jenners* was incompetent, it would then be necessary that we should inquire whether the deposition of *Holloway*, in connection with the circumstances appearing in the case, did not prove sufficient to entitle the complainant to the relief sought; but as we have concluded *Jenners* is competent, we need not prosecute that inquiry. It may, however, be observed that the respondents to this bill do not profess to answer from any knowledge they possess of the matters in controversy. In such a case, though their denials may be positive, they are not entitled to that weight which requires evidence equivalent to that of two witnesses to overcome them. 9 Cranch, 160.

Waiving also the question whether the objection to *Jenners* does not come too late, we proceed to examine it. It is said *Jenners* is interested in the event of the suit, because, should the state fail in obtaining her money in this proceeding, he will be liable over to her for the amount. If he is not so liable his competency is not denied. As a general rule, agents are witnesses; and in many cases they are so *ex necessitate*, even where they may be interested; but *Jenners* is not shown to be interested in the present case, and it is incumbent on the party objecting to a witness to show his incompetency. 6 Conn. 29. *Jenners* could in no event be interested, unless he had been negligent in securing this loan:

May Term, 1846.

There is nothing upon the record showing negligence. The papers are executed in due form; the mortgage was recorded in legal time from its delivery and the payment of the money; the proper certificate that the estate was, at that time, free from incumbrance was obtained; and it is presumed, nothing appearing to the contrary, that the proper affidavit of the mortgagor was filed with the agent. Nor are objections to the admissibility of evidence in any case to be favoured, when made after it is too late for the opposite party to restore the competency of the witness by a release. 7 Wend. 180.

Lapse of time is also suggested as a bar to setting up the fraud in this case. It seems to us that the occasion of foreclosing the mortgage was the proper one for presenting this question.

*Per Curiam.*—The decree is reversed with costs. Cause remanded, &c.

*R. Jones,* for the plaintiff.

*Z. Baird,* for the defendants.