CASE 106—JUNE 13.

# Owsley v. Philips.

APPEAL FROM LINCOLN COMMON PLEAS COURT.

1. A mere promise to the obligee by a party whose name has been signed to a note by the principal therein, without the knowledge or consent of the promisor to pay the note, or a part of it, is without consideration and void.

2. Such a promise cannot be regarded as a ratification of the act, and the note as to the promisor is invalid.

M. H. OWSLEY AND T. P. HILL FOR APPELLANT.

The third instruction given by the circuit court is error. (6 Excheq., Crook v. Cook, 98; 33 Mo., 334; Cent. Law Jour., 1879.)

R. M. & W. O. BRADLEY AND HOPPER FOR APPELLEE.

Appellant ratified the act of Middleton by his promise to pay the note. (Greenleaf on Ev., vol. 2, 297; Bouv. Inst., vol. 2, 25; Forsyth v. Bonta, 5 Bush, 548.)

JNO. M. PHILLIPS FOR APPELLEE.

The instructions given by the circuit court contain no error. (46 Me., 176; 4 Allen, 447; 47 Penn., 143; 33 Conn., 95; 32 Ill., 387; 7 Humph., 224; Rucker v. Hamilton, 3 Dana, 43; Forsyth v. Bonta, 5 Bush, 548; Bouv. Inst., 1311, 1313; Story on Agency, 255-8; Civil Code, sec. 758.)

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

This action was instituted in the Lincoln common pleas. court by the appellee, L. V. Philips, against H. P. Middleton and J. S. Owsley on the following note:

"$2,150.61.              LANCASTER, Oct. 8th, 1866.

"Sixty days after date we promise to pay to the order of L. V. Philips twenty-one hundred and fifty dollars and. sixty-one cents, value received, negotiable and payable at. the National Bank of Lancaster, Ky.

"H. P. MIDDLETON,<br>"J. S. OWSLEY."

The appellant Owsley filed a plea of *non est factum*, and upon that issue the case went to the jury. It was shown from the testimony that the name of Owsley was signed by Middleton as the surety of the latter to the note in contro-- versy, and his authority to sign the name of the appellant being questioned, the appellee introduced proof conducing to show that Owsley, after the signing of his name to the note by Middleton, ratified that act by promising to pay the debt. It is shown by the statement of young Philips that, at the instance of his father, he saw the appellant, and was told by the latter to say to his father not to sue on the note, but to wait until Middleton's estate was wound up (the estate being insolvent), and he would pay whatever balance might remain unpaid. This statement is corroborated by the testimony of a brother of the witness, that the appellant had with him a like conversation. These conver-- sations Owsley denies.

At the conclusion of the testimony the court, on the motion of the appellee, instructed the jury, "that although the defendant Middleton signed the name of J. S. Owsley

to the note without his authority so to do, yet, if they believe, from the evidence, the defendant Owsley thereafter ratified the same, or recognized it as his act and deed, they will find for the plaintiff." An exception was taken to the instruction as given, and a verdict having been rendered for the plaintiff (appellee), the appellant prosecutes an appeal to this court.

It is not pretended that the appellant received any part of the money for which the note was executed, but his liability as the surety only is attempted to be maintained on two grounds: 1st. That he authorized the principal obligor, Middleton, to sign his name as the surety; and 2d. If no such authority was given, he became liable by the promise to pay made after the execution of the note; that this was a ratification of the void and wrongful act of Middleton. As the law existed prior to the adoption of the General Statutes, an authority by the appellant to Middleton, although verbal, to sign his name to the note as surety, was binding upon him, and upon that fact being established, his liability is unquestioned.

The only question necessary to be considered arises on the instruction by which the appellant is made liable as the surety, on the ground that he ratified the fraudulent act of Middleton by his agreement to pay the debt. The proof fails to show that Middleton had any general authority to sign the name of the appellee, either as principal or surety, to such obligations, and there is no evidence conducing to show that Owsley obtained any part of the money, or was in any manner deriving a benefit from the execution of the note. If the name of the appellant was placed to the note as surety without any authority from him, the act is a nullity, and no subsequent promise to pay by him amounts

to a ratification or creates a liability. The contract was fully consummated: the note executed, and the money obtained by Middleton. The writing, as to Owsley, was a *nudum pactum*, and no subsequent agreement made by him to pay the debt can be enforced in the absence of a consideration to support it. The writing being void as to him when executed, his subsequent promise to pay must be treated as if his name was not upon the paper, and, being without consideration, no action can be maintained against him on the promise to pay or on the original note. The relation of principal and agent never existed between Owsley and Middleton. The act done by Middleton was for his benefit alone, and if without any authority from Owsley, and from which he received no benefit, we cannot well see how the doctrine of ratification can be made to apply. An agent may commit an unauthorized act in the name of his principal, and the latter may ratify it by a partial performance of the agreement, or by accepting its benefits; or, if the act was done for or in the name of the principal, he may ratify it, although no benefit is or can be derived from it.

In this case no agency existed, and the only question for the jury to try was, it being conceded that Owsley did not sign the paper, had Middleton the authority from Owsley to sign his name? and while the promise to pay by the surety, if made, cannot amount to a ratification of the void act, it is a fact that may be considered by the jury in determining the question as to the alleged authority given by Owsley to Middleton to execute the paper. Nor does the fact that a promise was made to pay this debt operate as an estoppel on the appellant. The appellee was not induced to part with his money by reason of any such undertaking on the part of Owsley, but the latter is really the injured party, in being

Owsley v. Philips.

compelled to resist the recovery on the ground that the writing was not his act and deed, when it must have been known to the appellee, at the time he accepted the note, that Owsley had not in person signed it. It was appellee's duty to make inquiry as to this attempted exercise of authority on the part of Middleton, and the whole question in this case is, and none other, was Middleton authorized by Owsley to sign his name to the note?

Many reported cases may be found recognizing the principle that an act done, or contract made by one for or in the name of a party, though without any authority whatever, becomes the contract of the party if subsequently adopted and ratified by him; and while we are not disposed to question the philosophy or wisdom of this doctrine, we cannot admit its application to the case of one who is sought to be made liable as surety on a contract made with and for the benefit of another for no other reason than the promise to pay, when there was no legal, equitable, or moral obligation on the party to assume the debt.

Greenleaf says: "If a party, being inquired of, acknowledges his signature, without objection, this is sufficient, although it was signed without his authority." (2 Greenleaf, 297.) This is certainly the correct doctrine, and is found in that part of his work on evidence in which he is discussing the effect of the acknowledgment and delivery of deeds. If he acknowledges the signature to be his, it is sufficient; or, if he delivers it, although his name was signed by a stranger, it is binding upon him. The receipt of the purchase money, the delivery of the deed, all such acts would estop the grantor from asserting any claim against the grantee, although his name to the original deed may have been signed without his authority.

In the case of Forsyth against Bonta, reported in 5 Bush, relied on by counsel for the appellee, there was proof con-- ducing to show that the appellant, Forsyth, obtained the money, and it is not pretended that he was the surety only. Although the note was executed by Irvin, if Forsyth ob- tained the money, or, as between the obligors, was interested in it, we see no reason why he should not be estopped from denying the authority of Irvin to sign his name; but the doctrine that one may ratify a forged instrument by a subse- quent promise to pay we are not disposed to adopt, although. cases may be found sustaining that view of the question. To say that one who is neither the recognized agent of, or· doing business for, another can sign the latter's name to· an obligation for money, in which he is in nowise interested, and without any authority whatever, and then make him responsible upon what is designated a ratification, and for no· other reason, is, we think, a principle fraught with too much danger, even to those who engage in the ordinary business. transactions of life, to be sanctioned by this court. (Story on Agency, 456, 499;—33 Missouri;—6 Exchequer; Crook v. Cook;—Workman v. Wright, Supreme Court of Ohio.)

The judgment is reversed, and cause remanded for further· proceedings not inconsistent with this opinion.