## KURIGER v. JOEST, ET AL.

[No. 2,349. Filed Jan. 27, 1899. Rehearing denied June 30, 1899.]

ESTOPPEL.—*Forgery—Bills and Notes—Principal and Surety.*—Where the payee of a promissory note called upon the surety, before the note was due, and while the principal was solvent, to see if he would buy it, and the surety examined the note, and his signature, and made no claim of forgery, but arranged for a subsequent meeting to purchase or take up the note, and the payee by reason thereof delayed bringing suit on the note until after the insolvency and death of the principal, the surety will be estopped from setting up the defense of forgery.

From the Vanderburgh Circuit Court. *Reversed.*

*Philip W. Frey* and *Oscar E. Woods,* for appellant.

*James G. Owen* and *Elliott & Elliott,* for appellees.

WILEY, J.—The record was filed in this court January 7, 1897, and appellees' brief was not filed till November 17, 1898. The appellant was plaintiff below, and the only question presented by the record is the sufficiency of the complaint. The complaint was originally in four paragraphs, but the first was withdrawn. The second, third, and fourth paragraphs of complaint were challenged by a demurrer, which was sustained. Appellant refusing to plead further, judgment was rendered against him for costs. The ruling on the demurrer is assigned as error.

Counsel for appellant in their brief have so fully, fairly, and specifically stated the facts pleaded that we adopt their language. They say: "It is alleged substantially in each paragraph that the appellant Conrad Kuriger loaned to one Nicholas Weber the sum of five hundred dollars ($500), and took from said Weber for said loan a note signed by Nicholas Weber, and purporting to be signed by Nicholas Joest, appellee, as surety for Nicholas Weber; that, before said note became due, appellant Kuriger, believing the signatures thereon to be genuine, presented said note to appellee Joest, requesting said appellee to buy the same, he, the appellant, desiring to go to Germany, to be gone some time, and wishing to dispose of it before leaving; that said Joest examined said note, and what purported to be his signature thereon, and told appellant to return in two days, and if he, the appellee, could raise the money, he would buy the same; that on the day appointed appellant went to appellee, Joest, and was told by him that he did not have $500 of loose money. Appellee further told appellant to go to a certain political meeting on an evening a few days from that time; that Nicholas Weber, maker of said note, would be there, and he would then ascertain if said note could not be taken up; that when appellant went to said meeting said Weber was not there; that thereafter he had another conversation with said appellee Joest, wherein said Joest told appellant that he, Joest, would try and dispose of the note before appellant

left for Germany; that at none of these meetings, and at no time, did appellee inform said appellant, or intimate to him, that the signature purporting to be that of the appellee was not what it purported to be, but, by his acts and conduct, gave the appellant to understand that the note and the signature thereon were valid. That, a few days after the last conversation with appellee, appellant went to Germany, was absent from the 14th day of August, 1894, until the 12th day of October, 1894; that while appellant was absent from this country the said Nicholas Weber, maker of said note, died, and that his estate was insolvent. Appellant also charges in his complaint that if the appellee Joest had informed him that the note was not in all respects valid and all right, he, the said appellant, would not have gone to Germany, but would have remained at home and secured himself against any loss on account of said loan to said Weber. That said appellant believed the note and signatures were true and genuine, and relied upon the same, because the said appellee had made no intimation whatever that said note was not in all respects right and correct; and that appellant had no knowledge or information that there was, or would be, any pretense on the part of said Joest that said note was not genuine, until after the return of said appellant from Germany, and after the death of Weber. * * * The further allegation is made that appellee, Nicholas Joest, knew appellant held the note of Nicholas Weber, and that the name of Nicholas Joest was attached as surety, and did not make known to the appellant that said note was not genuine, although said appellee had ample opportunity so to do. That said appellee well knew whether said note was genuine or not, and purposely concealed the facts from appellant. * * *

"The third paragraph of the plaintiff's amended complaint is substantially the same as the second, save and except that the appellant makes the additional allegation that, if appellee had disclosed to the plaintiff below that the signature of the

said Nicholas Joest was a forgery, the plaintiff would and could have caused the apprehension of the said Nicholas Weber, maker of the note, as a forger, and upon the crime of forgery, or for having obtained money under false pretenses; and, at the same time, could and would have brought suit against Nicholas Weber, the maker of said note, for the sum represented by the note, for money had and received by said Nicholas Weber.   *   *   *

"The fourth paragraph of the plaintiff's amended complaint is substantially the same as the second and third, save and except that the additional allegation is made that, if the forgery of the name of Nicholas Joest had been disclosed to the plaintiff below, he could and would have brought suit against the said Nicholas Weber; that the said Nicholas Weber was at that time solvent, and that said plaintiff, the appellant here, could have secured and collected his debt by process of law."

The prayer of the complaint is that appellee ought not to be permitted to make the pretended claim that the note sued on is not genuine, and that he be estopped from so claiming. A copy of the note accompanies the complaint as an exhibit. The note is dated November 1, 1893, due in one year, and is for $500.

From the statement of the facts pleaded, it appears that each paragraph seeks to invoke the doctrine of estoppel *in pais*, and this is the sole question discussed. Upon the question as to what is ordinarily required to constitute an estoppel by conduct, opposing counsel agree that there must be, (1) a representation or concealment of material facts; (2) the representation must have been made with a knowledge of the facts; (3) the party to whom the representation was made must have been ignorant of the truth of the matter; (4) the representation must have been made with the intention that the other party should act upon it; (5) the other party must have been induced thereby to act.   See *Roberts* v. *Abbott*, 127 Ind. 83; Bigelow on Estoppel,

Kuriger *v.* Joest.

(ed. 1886), p. 552. We must take the facts as pleaded, apply them to the rules just stated, and determine whether they constitute an estoppel *in pais*. (1) There must be a representation or concealment of a material fact. The allegations in each paragraph of the complaint are very full and specific that the appellee did conceal from appellant the fact that his name was forged to the note in suit. It is averred that the note was exhibited to appellee; that he examined it, and made an engagement with appellant to meet him at a subsequent time to negotiate further with him in regard to taking up or purchasing the note. Appellee must have known that he did not sign the note, and that, as to him, it was forged, and by his demurrer he admits the facts charged. As to whether or not he signed the note was a material fact, and what he said about the note, and his conduct in relation thereto, was calculated to and did convey to the mind of the appellant that his signature was genuine; and by his failing to inform appellant that the note was a forgery, as to him, he thereby concealed from him a material fact. (2) It is also shown by specific averment that appellee had full knowledge that the signature on the note purporting to be his was not his genuine signature, but that it was forged, and hence the concealment was made with knowledge of that fact. (3) It is further shown that the appellant, from whom appellee concealed the facts that as to him the note was a forgery, was ignorant of such fact. He believed in good faith, and had good reason to believe, that the note was genuine. (4) As appellee thus concealed from appellant a material fact, it was necessary to charge that his conduct and silence were intended to operate as a delay on the part of appellant, and the allegations of each paragraph of the complaint are amply sufficient to show that it did so operate. (5) It also clearly appears from the allegations of each paragraph that appellant was, by the silence and conduct of appellee, induced to act, for it is shown that he believed that the note was genuine, and left his home, and went to Europe,

resting in that belief. Thus it appears that all the elements required to constitute an estoppel *in pais* are present.

Appellees insist that the case of *Henry* v. *Heeb*, 114 Ind. 275, is an authority in this case, and must control. We have examined that case with much care, and find that the decision rested upon facts materially different from those in the case at bar, and therefore is clearly distinguishable from it. In that case it was sought to invoke the doctrine of ratification of a forged signature, and the court said: "The distinction made in many well considered cases seems to be this: Where the act of signing constitutes the crime of forgery, while the person whose name has been forged may be estopped by his admissions, upon which others may have changed their relations from pleading the truth of the matter to their detriment, the act from which the crime springs cannot, upon considerations of public policy, be ratified without a new consideration to support it." And continuing, it was further said: "In the case of a known or conceded forgery, we ·are unable to discover any principle upon which a subsequent promise by the person whose name was forged can be held binding in the absence of an estoppel *in pais*, or without a new consideration for the promise." Appellant does not contend that the facts pleaded show a ratification, but that what appellee did and said about the note estops him from now pleading *non est factum*. We can not understand why one who sees and knows that his name has been forged to a note may not, by his conduct, be estopped from pleading forgery. It is settled by many well considered cases that while a person whose name has been forged may be estopped by his admissions, upon which others may have changed their relations, from pleading the truth of the matter to their detriment, the act from which the crime springs cannot upon considerations of public policy be ratified without a new consideration to support it. *Henry* v. *Heeb*, 114 Ind. 275; *Lewis* v. *Hodapp*, 14 Ind. App. 111; *Shisler* v. *Vandike*, 92 Pa. St. 447, 37 Am. Rep. 702;

*McHugh* v. *County of Schuylkill*, 67 Pa. St. 391; *Work-man* v. *Wright*, 33 Ohio St. 405; *Owsley* v. *Philips*, 78 Ky. 517; 2 Randolph Com. Paper, section 629. These cases firmly establish the doctrine that a person, by admissions, may be estopped from pleading forgery; and, by analogy, it is plain, that he may also be estopped by conduct, where such conduct leads another to act to his detriment.

Appellant undoubtedly, under the facts, suffered a change in his relations, by refraining from steps which otherwise might, and probably would, have secured him in his rights as against the maker of the note. As to what is required to constitute a change of relations may be easily determined from authorities. Thus, in *Purviance, Adm.,* v. *Jones,* 120 Ind. 162, it was held that where one is induced to forego his purpose to secure his money before the statute of limitations has barred his claim, by the assurance of the debtor that a note has been signed and delivered to a bank for his benefit, he may, upon the death of the debtor with the note still in his possession, be entitled to compel a delivery, or require it to be treated in an equitable suit as having been delivered as represented. In discussing the question, Mitchell, J., on page 165, said: "It may be that the evidence was such as to have justified a finding that the note had been delivered to the bank for the plaintiff's benefit; but the fact was not so found. The intestate, having received the plaintiff's money, may have induced him to forego any effort to enforce collection, upon the assurance that a note had been left with the bank, for the amount of the debt, for his benefit. If the plaintiff rested upon that assurance until the statute of limitations had barred the debt, the estate may now be estopped to say that the note was not delivered, as against one who relied upon the statement and who would now suffer actual pecuniary loss if the note, actually signed, was not treated as having been delivered according to the representations made and relied upon."

In *Leather Manufacturers Bank* v. *Morgan,* 117 U. S.

96, appellees were depositors in appellant bank. They sent their pass-book to be written up and balanced, and, when this was done, it was returned to them with the debits and credits and their paid and canceled checks. Some of the checks which had been duly signed had been raised by a clerk in their employ before being presented for payment. Appellees did not make any examination of the paid checks and the pass-book to see if any error had been made, and an action was brought against the bank to recover the balance in favor of appellees, predicated upon the amount of the checks as originally issued. The court, by Mr. Justice Harlan, said: "Still further, if the depositor was guilty of negligence in not discovering and giving notice of the fraud of his clerk, then the bank was thereby prejudiced, because it was prevented from taking steps, by the arrest of the criminal, or by an attachment of his property, or other form of proceeding, to compel restitution. It is not necessary that it should be made to appear, by evidence, that the benefit would certainly have accrued to the bank from an attempt to secure payment from the criminal. Whether the depositor is to be held as having ratified what his clerk did, or to have adopted the checks paid by the bank and charged to him, cannot be made, in this action, to depend upon a calculation whether the criminal had at the time the forgeries were committed, or subsequently, property sufficient to meet the demands of the bank. An inquiry as to the damages in money actually sustained by the bank by reason of the neglect of the depositor to give notice of the forgeries might be proper if this were an action by it to recover damages for a violation of his duty. But it is a suit by the depositor, in effect to falsify a stated account, to the injury of the bank, whose defense is that the depositor has, by his conduct, ratified or adopted the payment of the altered checks, and thereby induced it to forbear taking steps for its protection against the person committing the forgeries. As the right to seek and compel restoration and payment from the person committing the

forgeries was, in itself, a valuable one, it is sufficient if it appears that the bank, by reason of the negligence of the depositor, was prevented from promptly, and, it may be, effectively, exercising it."

The Supreme Court of Texas has stated the rule as follows:  "It has been held by this court that when one party has been prevented or induced by the conduct and representations of another from taking prompt action for the collection of his debt, that this is such a change in his position for the worse, as to meet the requirement of the law in order to create an estoppel," citing as authority, *Schwarz* v. *National Bank*, 67 Tex. 217, 2 S. W. 865.

Herman on Estoppel, Vol. 2, p. 906, says: "It is not necessary that a party should act affirmatively upon a declaration to create an estoppel.  If he had acted not in reliance upon it, but has means in his power to retrieve his position, and, relying upon the statement and in consequence of it he refrains from using these means, the estoppel will be enforced for his benefit."

In *Casco Bank* v. *Keene*, 53 Me. 103, arrest is named as one of the means of obtaining security which the plaintiff had not availed himself of, by the conduct and declaration of his adversary.

In *Knights* v. *Wiffen*, L. R. 5, Q. B. 660, it was held that it need not appear that any benefit would result from the attempt to secure payment, but that the injured party had the right to make the attempt; and, losing the exercise of the right, by his reliance upon the declaration, the declarant was estopped.

In *Continental Nat. Bank* v. *National Bank of the Commonwealth*, 50 N. Y. 575, the plaintiff held a note purporting to have been forged.  Upon hearing that the same was forged, plaintiff asked defendant about it, and, after looking at the note, admitted the signature to be genuine.  The plaintiff relied upon such statement, and refrained from

Kuriger v. Joest.

taking any steps against the person who passed the forged instrument to secure payment from him. The trial court instructed the jury that if the plaintiff relied upon the defendant's admission that the note was genuine, and was thereby induced to refrain from obtaining security by the arrest of the one passing the note, or by attachment of his property, and thereby sustained an injury, the defendant would be estopped from denying his signature. This instruction was held to state the law correctly, and in the course of the opinion, Folger, J., said: "These cases appear to us to lay down a sound rule. It must be that the conduct of men, which may be influenced by the declarations of those with whom they deal is not confined to that which is shown by affirmative and positive acts following upon and induced by those declarations. Conduct is not alone that which is active, positive, and affirmative. Conduct, as limited to this inquiry, is the reserve of one's own powers of person and property, and of those means of help which can be summoned from friendly or accommodating sources and from the tribunals and officers of justice, and is as often forbearance of their use and quiescence and contentment with affairs as they are, as action designed to change affairs. And such quiescence and content, induced by false or erroneous statements, may be quite as damaging as any result from action. It is as bad to fail to recover property gone, when with the knowledge of an existing fact it might have been retrieved, as it is to lose it. And so it is as damaging to rely in quiet upon an untrue statement, to the neglect of using the means of recovery, as it is to rely upon an untrue statement, and by action thereon meet with loss irreparable. To hold otherwise, would be to assert that the law makes a difference between damage received by action and omission to act, in circumstances precisely similar, save in these elements."

By the conduct and representations of the appellee, he either adopted the signature, knowing it to be a forgery, or, by his silence and concealment, induced appellant to rely

and act upon it, and in either event, he should not, in good conscience, be permitted to say that he is not bound, under the facts pleaded, to respond to appellant for any injury he has sustained. In other words, he is estopped from setting up the defense of forgery. As was said in *Casco Bank* v. *Keene*, 53 Me. 103, "If the jury found that the defendant adopted the signature, knowing it to be a forgery, his liability for the whole amount of the note is not denied. And the result would have been the same if they found that he was estopped from denying the signature. There are some cases in which one may be liable only for the damages caused by his representations. But the general rule applicable to estoppels *in pais*, is not, that one may deny the truth of representations made by himself, upon which another has been induced to rely, and pay the damages caused thereby; but, that he shall not be permitted to deny their truth."

In the Massachusetts case, *Bank* v. *Buffinton*, 97 Mass. 498, the court said: "The injury, which permitting him to deny the truth of his representation would occasion to the plaintiffs, is the loss of a good and valid indorser upon the notes, which, so far as he is concerned, is the liability for their full amount. If the action were for deceit in making a false representation, the rule of damages would be found by ascertaining, as the defendant asks should be done in this case, in how much worse condition the plaintiffs had been put by reason of the deceit. But the plaintiffs are not in that position. They had some notes of doubtful value. They do not ask to be compensated for having discovered this fact a few weeks later than they might have done, if they had not trusted to the defendant's statement, which perhaps occasioned them little injury; but they say, and the finding of the jury entitles them to say, that in consideration of their trusting the defendant's assurances, by his procurement, and thereby exposing themselves to the injury which such delay might occasion, which is a sufficient

consideration in law, the defendant made himself liable to them as indorser. ' * * * The injury in the case at bar which would result to the plaintiff from allowing the defendant's admission that he was indorser to be disproved, would be the loss of his security as indorser; and the estoppel is to be co-extensive with the injury."

In the case of *Forsyth* v. *Day*, 46 Me. 176, it was held that if a forged note is presented to the alleged maker, and he deceived the holder by language and acts calculated to induce reasonable belief that the note was genuine, he will be estopped from denying his signature if the holder, acting upon the belief, has been injured. This case is parallel, in all of its essential features, to the one before us. Here appellee was shown the note with what purported to be his own signature; he examined it; he told the holder that he did not have ready money at that time to take up the note; that he would see him again in a short time, and fixed the place and time of the meeting; he again saw the note; agreed to see Weber, and see what could be done; he must have known that his signature to the note was forged, and yet he concealed the fact of the forgery, to the injury of appellant, in that he was lulled into silence and inaction, and did not take the steps necessary to preserve his rights, and secure the payment of the money, which he had loaned Weber, and which the averments of the complaint say he could and would have done. And in line with the doctrine last announced it was held in *Merrill* v. *Tyler*, Seld. Notes 83, that language of a person whose name had been forged to a note, which induced a holder to advance more money upon it, estops the party purporting to be the maker from denying his signature, in so far as it concerns the money advanced on the faith and reliance of his word. There is a long line of cases holding that mere silence of the person whose name has been forged, when the instrument purporting to bear his signature is shown him, will not work an estoppel, unless the holder has been damaged thereby. *Corser* v. *Paul*, 41

N. H. 24; *Salem Bank* v. *Gloucester Bank*, 17 Mass. 1; *National Bank* v. *Wentzel*, 151 Pa. St. 142, 24 Atl. 1087; *McKenzie* v. *Linen Co.*, L. R. 6, App. Cas. 82. But we have not been cited to any case, and we have been unable to find any, holding that the silence of one whose name has been forged with a knowledge of the fact, where the holder has relied and acted upon such silence to his injury, in the belief. that the signature was genuine, would release him from liability.

The doctrine of estoppel will apply when the party sought to be estopped has stood by and remained silent, when it was his duty to speak. This is one of the essential elements of estoppel. Thus in *Anderson* v. *Hubble*, 93 Ind. 570, 47 Am. Rep. 394, the court at page 573 said: "The term 'standing by' so often used in the books and reports in discussing cases of estoppel, does not mean actual presence or actual participation in the transaction, but it means a silence where there is knowledge and a duty to make a disclosure." It has been held that silence, when it is the duty of the party to speak, is equivalent to concealment. *Studdard* v. *Lemmond*, 48 Ga. 100; *Cady* v. *Owen*, 34 Vt. 598; *Markland* v. *Kimmel*, 87 Ind. 560; *Wheeler* v. *New Brunswick R. Co.*, 115 U. S. 29; *Jeneson* v. *Jeneson*, 66 Ill. 259; *Griffin* v. *Nichols*, 51 Mich. 575, 17 N. W. 63. And in *Gatling* v. *Rodman*, 6 Ind. 289, it was held, that the term "standing by" does not mean or impart an actual presence, but implies knowledge under such circumstances as to render it the duty of the possessor of the particular knowledge to communicate. See, also, *State* v. *Holloway*, 8 Blackf. 45; *Ellis* v. *Diddy*, 1 Ind. 561. In *Richardson* v. *Chickering*, 41 N. H. 380, the meaning of the phrase "standing by", as defined in *Gatling* v. *Rodman*, *supra*, is expressly approved, and favorably commented upon. Herman on Estoppel, p. 1131, section 1007, lays down the following rule: "Where a party sees an obligation, with his name signed to it without his authority and consent, yet tells the

Kuriger *v.* Joest.

obligee, that the signature is his, he is bound by it, and will be estopped to say that it is not his act and deed. Reason and the policy of the law forbid that a party, who is apparently an obligor, should assert that he is such, and bound by his obligation, and afterward escape the debt by plea of *non est factum.*" While appellee did not, when the note was shown to him, and he saw his name upon it, tell appellant that the signature was his, he did not deny it, but his representations and conduct led appellant to believe that it was his genuine signature, and there is no question but what he relied and acted upon it. By his conduct, with a full knowledge of the facts, he conveyed to the mind of appellant that the note bore his genuine signature, with as much force and certainty as if he had said to him, "Yes; that is my note, and I signed it."

From the many authorities we have cited, and upon elementary principles as established by the text-writers, we may deduce the wholesome rule, that where, by the conduct or representations of one, another is induced to act, or to refrain from acting, and injury results to him, the party making the representations is thereafter estopped from denying the truth of such representations. Hence, when appellee, by his representations and conduct, led appellant to believe that the note in suit was genuine, and resting in that belief he was induced to forego suing Weber, as for money had and received, or to take such other steps as might be necessary to secure to him the payment of the money loaned, and he was induced to leave his home for a sojourn in Europe for several months, and on his return to find that Weber was dead, and his estate dissipated; and the further fact that if appellee had informed him that his name had been forged to the note he could have secured himself,—these facts, and such conduct, which are well pleaded, are sufficient to estop appellee from now asserting that the note as to him is a forgery. Each paragraph of the complaint states a good cause of action, and the court erred in sustaining the demur-

rer thereto. The judgment is reversed, with instructions to the court below to overrule the demurrer to each paragraph of the complaint.

## ON PETITION FOR REHEARING.

WILEY, J.—Appellee has filed a petition for a rehearing and, in support of it, has furnished us with an elaborate and able brief. As the record presented but one question, the error complained of was in holding that the second, third, and fourth paragraphs of complaint were each sufficient to withstand a demurrer for want of facts, as was held in the original opinion. Upon a reëxamination of the several paragraphs of complaint, and the authorities, it is the opinion of the majority of the court, that we were in error in holding the second and third paragraphs good. The majority, however, adhere to the conclusion reached in the original opinion as to the fourth paragraph of complaint. The writer is still of the opinion that the second and third paragraphs are good, but, for the reasons here stated, the original opinion is modified, and the court below is directed to overrule appellee's demurrer to the fourth paragraph of amended complaint.

The petition for a rehearing is therefore overruled.