## FARMERS' BANK v. ORR ET AL.

[No. 2,538. Filed Oct. 25, 1899. Rehearing denied June 8, 1900.]

PLEADING.—*Payment.*—A plea of payment to constitute a bar to an action must allege that payment was made before the commencement of the action. *p. 79.*

SAME.—*Payment.*—*Gravel-Road Certificates.*—A plea of payment in an action by the assignee of a gravel-road certificate to enforce the collection thereof must allege that payment was made before the certificate was assigned and before notice to defendant of such assignment. *pp. 80, 81.*

SAME.—*Payment.*—*Gravel-Road Certificates.*—An answer by defendant in an action by the assignee of a gravel-road certificate to enforce collection that he furnished gravel and performed certain labor in the construction of that part of the road abutting on his lands, under an agreement with the contractor that the same was to be applied in payment of his assessments, is insufficient, where

no date was specified on which such contract was entered into, and it was not shown that the contract was made prior to the issue and sale of the certificate.  *pp. 81-83.*

ESTOPPEL.—*Payment.*—*Gravel-Road Certificates.*—*Pleading.*—In an action on a gravel-road certificate by the assignee, the defendant answered that his assessments, on which the certificate was issued, had been paid by him in labor and material furnished in the construction of the road abutting his lands, under an agreement with the gravel-road contractor, with the knowledge and consent of the superintendent.  Plaintiff replied that it had been the owner of the certificate for ten years and that defendant had made payments of interest thereon during such time, and asked for extension of time, and failed to inform plaintiff of the payment claimed to have been made by him to the contractor until it was too late to bring suit against the superintendent.  *Held,* that the facts pleaded by the reply were sufficient to constitute an estoppel to the defense pleaded by the answer.  *pp. 83-89.*

APPEAL AND ERROR.—*Assignment of Cross-Errors.*—The action of the court in overruling a demurrer to the complaint cannot be reviewed on an appeal by plaintiff from the ruling on the answers where no assignment of cross-error was made thereon by appellee. *pp. 89, 90.*

From the Clinton Circuit Court.  *Reversed.*

*H. C. Sheridan,* for appellant.
*L. J. Curtis* and *Morrison & Morrison,* for appellees.

WILEY, J.—Appellant was plaintiff below and brought its action against appellee Orr and others to foreclose and enforce a lien for certain gravel-road certificates held by it as assignee.  The cause was put at issue, and trial was had by the court, resulting in a general finding and judgment against appellant on its complaint and in favor of appellee Orr on his cross-complaint.  The errors assigned question certain adverse rulings to appellant, in this: (1) The overruling of appellant's demurrer to the cross-complaint of appellee Orr; (2) the overruling of appellant's demurrer to the second paragraph of the separate answer of appellee Curran; (3) the overruling of appellant's demurrer to the fourth paragraph of the separate answer of appellee Curran; (4) the sustaining of the demurrer of appellee Orr to the second paragraph of reply to the second and amended

fourth paragraph of the separate answer of appellee Orr; (5) the sustaining of the demurrer of appellee Orr to the second paragraph of answer to the cross-complaint of Orr; (6) the sustaining of the demurrer of appellee Orr to the third paragraph of reply to the second paragraph and fourth amended paragraph of appellee Orr's answer to the complaint, and (7) the sustaining of the demurrer of appellee Orr to the third paragraph of appellant's answer to the cross-complaint of appellee Orr.

While these several paragraphs of pleading are voluminous, the questions at issue may be briefly stated. The three paragraphs of complaint are identical, except that they are each based on different certificates and describe different tracts of real estate, and a statement of the facts charged in one will suffice for all. The complaint avers the filing of a petition in the commissioners' court, praying for the improvement, grading, etc., of a certain described highway; that the board of commissioners duly found that the requisite number of petitioners whose lands were within two miles of the proposed improvement had signed the petition; that the board thereupon appointed viewers, as required by statute; that they were directed by the board to proceed to examine, view, lay out, and straighten the road to be improved, and make their report to the board at a time fixed in the order appointing them; that the board also appointed an engineer; that said viewers were duly qualified, and filed their report; that said proposed improvement was found by said board to be of public utility; that the benefits assessed exceeded the expenses and damages, and it was ordered and so entered of record that said improvement be made. It is also averred that one Samuel Merritt was appointed superintendent to superintend the proposed work; that as such superintendent he executed his bond to the approval of said board; that he was duly qualified and entered upon the duties of his said office. It is then alleged that said road was constructed; that appellees' lands, describing them,

were assessed therefor in a fixed sum; that the *pro rata* share of said lands, as fixed by the superintendent, was a certain and definite sum, which is specified; that said superintendent made, executed, and issued certificates of assessment for the construction of said road against the real estate of appellee Orr, by the terms of which the payment thereof was divided into six equal instalments, due six, twelve, eighteen, twenty-four, thirty, and thirty-six months from date as designated by coupons attached. It is further averred that after the levy of said assessments and the issuance of said certificates the same were sold and assigned to appellant before maturity for a valuable consideration, and indorsed by said superintendent and Thomas Slattery & Company. It is also charged that the said Merritt is dead, and his children and heirs at law are made parties. It is then charged that the first two coupons on account of said certificate have been paid, and that on May 23, 1891, the interest on the coupons was paid by appellee Orr to such date. It is then averred that on October 13, 1887, the improvement of said highway was reported to the board as completed and was then turned over to the board of commissioners by said superintendent. It is further charged that such certificate is a first lien upon the real estate described therein; that the appellee Orr is still the owner of the same; that said certificate is due and remains unpaid, wherefore, etc. Copies of the certificate and coupons upon which each paragraph of the complaint is based are filed as exhibits. A demurrer to each paragraph of complaint was filed and overruled. Appellee filed a cross-complaint and an answer in four paragraphs.

The cross-complaint avers, in substance, the same facts as set out in the complaint as to the petition and proceedings before the board of commissioners, the assessment of his lands, the issuing of the certificates sued on, and their assignment to appellant. It is then charged that said certificates have been fully paid by the appellee in the follow-

ing manner: That on the — day of ——, 1886, appellee Orr entered into a written contract with one Charles Pence, the contractor, for the construction of said road, whereby he agreed to furnish gravel from pits on his real estate to gravel about one and one-half miles of said road, at the rate of eight cents per load, and that the pay for such gravel should be applied to the payment of the assessment made against his lands; that by an oral agreement with said Pence appellee was to work in said pit, and furnish a team and hand to haul and work on said road, and to furnish other work and material thereon; that under said contract he furnished gravel for one and a half miles of said road; that he also furnished a team and hand to haul and work in said pit, and in all things complied with his said contract; that the gravel, work, etc., amounted to $400; that in the settlement between said Pence and appellee, the pay for said work and material was first applied to the payment of said assessments on appellee's real estate; that said Merritt knew of and concurred in said contracts and in the settlement between appellee and said Pence, and that, instead of delivering to said Pence certificates to the amount of said assessments, he was charged with having received pay in said amount, and said certificates were retained by said Merritt as fully satisfied, to be delivered to appellee. It is then averred that said assessments appear as a lien against his real estate and he prays that they be canceled and that the title to his lands be quieted. A demurrer to this cross-complaint for want of facts was overruled.

The first paragraph of appellee Orr's answer was a general denial. In the second paragraph of answer appellee simply avers payment of the certificates sued on, without describing the manner or stating the time of payment. In the third paragraph appellee admits the construction and completion of the road, the assessments made against his lands, and the issuance of the certificates, but denies the assignment to appellant. The amended fourth paragraph

of answer is a special plea of payment, and the facts alleged therein are the same as stated in the cross-complaint. A demurrer to the second, third, and amended fourth paragraphs of answer was overruled.

Appellant's answer to the cross-complaint was in two paragraphs, the first of which was a general denial. In the second paragraph it is averred that appellant purchased the certificates sued on and paid a valuable consideration therefor before their maturity, and without notice of the facts stated in the cross-complaint; that such purchase was made on the — day of ——, 1886; that ever since appellant has been engaged in the banking business in the city of Frankfort, Indiana, and has known the cross-complainant intimately all of said time; that it has had possession and has been the owner of said certificates since their purchase; that during said time appellant's president, cashier, and other officers have frequently and at divers times, since the maturity of the first coupon, notified the cross-complainant that it was the owner of the certificates; notified him to call at its office and pay the same, and, since the maturity of the last of said certificates, appellant, in the due course of mail, has frequently demanded of appellee to call at its office and pay said certificates. It is further alleged that appellee frequently called at appellant's office, and conversed with its officers within the past ten years in reference to said certificates, but at no time did he ever claim that any portion of them had been paid; that frequently during said last ten years appellee promised and agreed with appellant to pay the same; that he had frequently and at various times begged and requested appellant to extend the time of the payment and give him an opportunity to pay the same without suit; that appellant has threatened suit against appellee on said certificates, and he called at appellant's office and begged appellant not to enter suit, but to give him further time and that he would pay the same; that on May 23, 1891, appellee called at appellant's bank and paid on

each of said certificates all the interest then due, and such interest was credited upon the back thereof in appellee's presence; that on the 31st of August, 1894, appellee paid as interest on said certificates the sum of $10, which was credited thereon; that when said payments were made, and at no other time, did appellee claim or pretend that said certificates had been paid, but on the contrary led appellant to believe that there was no defense existing against the collection thereof. It is further alleged that when said payments were made, and until the — day of March, 1896, the said Samuel Merritt, the superintendent who issued said certificates, was living in the said city of Frankfort, at which time he died, and that at any time previous to his death the facts relating to said certificates were obtainable from him by appellant. It is further charged that it was wholly and entirely because of the promises made by appellee that it deferred its action on said certificates and deferred the collection thereof; that it was induced by his requests and promises of payment; that because of being led by appellee to believe that there was no objection or defense existing against said certificates, it deferred a suit at law to collect the same till after the death of said Merritt. It is also alleged that appellant had no knowledge of the facts set out in the cross-complaint till after the death of said Merritt, and until after this action was commenced, when a knowledge of said facts was first imparted by the filing of the cross-complaint and answer herein; that by reason of said facts appellant was induced to defer its action to collect and enforce said certificates until it was too late for it to obtain the information that must necessarily have been possessed by said Merritt, and until it was too late to bring an action against said Merritt in the event that the facts set up in the cross-complaint are true; and that by reason of the facts above stated appellant was misled and prevented, in the event said facts are true, from bringing suit upon the bond of said Merritt as such superintendent,

who would have been liable thereon at any time before the statute of limitations had run against him for selling such certificates if the same were paid. The prayer of this paragraph of answer is that appellee Orr be estopped from pleading said contract and payment and the facts charged in his cross-complaint.

Appellant replied to the second paragraph of the separate answer and the amended fourth paragraph of appellee's separate answer, in two paragraphs. The first was a general denial, and the second sets up the same facts as alleged in the second paragraph of answer to the cross-complaint. A demurrer for want of facts was sustained to the second paragraph of answer to the cross-complaint and to the second paragraph of reply to the second and amended fourth paragraphs of the separate answer of appellee Orr. After these rulings appellant filed its third paragraph of reply to the second and amended fourth paragraphs of the separate answer of appellee Orr. These paragraphs seek to state facts constituting an estoppel *in pais,* and are similar to the preceding paragraphs of a like character, and differ from them in that the facts relied upon are set out more fully and with greater particularity. Appellant averred in these paragraphs that the conduct, acts, words, and promises of appellee were intended to and did mislead it, by which its right of action against Merritt was postponed until the statute of limitations had run against it, and until after his death, and left it without remedy except its right to enforce its lien, etc. A demurrer to each of them was sustained. There is no cross-error assigned. As the various questions presented for decision may arise upon a retrial of the cause in case of reversal, it will be necessary for us to decide each of them, and we will take them up in the order in which counsel for appellant has presented them.

It is urged that the second paragraph of appellee's answer is bad. In this paragraph appellee admits the construction of the gravel road, the assessments against his lands, etc.,

as charged in the complaint, and it avers, in the language of the pleader, "that he fully paid said assessments and that he owes nothing on account thereof." It seems to us that this paragraph of answer is defective in at least two particulars: (1) There is no averment that payment was made before the beginning of the action. A plea of payment does not need to allege the amount paid, nor the exact date of payment, nor the person to whom the payment was made. *Demuth* v. *Daggy,* 26 Ind. 341. But it is necessary to allege, to constitute a bar to an action, that it was paid before the commencement of the action. *Epperson* v. *Hostetter,* 95 Ind. 583; *Johnson* v. *Breedlove,* 104 Ind. 521; *Cranor* v. *Winters,* 75 Ind. 301; Work's Prac. §555.

The reason for the rule that a plea of payment should aver that payment was made before the commencement of the action is based upon the fact that to constitute a complete defense the payment must have been made before the plaintiff sought his remedy at law. If payment is made after suit is brought, it does not go in bar of the action, but only in mitigation of damages, unless it appears that costs accrued to the time of payment have been included in the payment, for the general rule prevails that a plaintiff who successfully maintains his action shall recover costs.

Works' Practice and Pleading, at §596, says: "Payment made after the suit is brought cannot be pleaded in bar of the action. It is and has been held that such payment may be proved in mitigation of damages. But the defendant may plead payment of the debt after the suit is brought, not in bar of the action, but in bar of the further maintenance of the action." See *Bischoff* v. *Lucas,* 6 Ind. 26; *Bank* v. *Brackett,* 4 N. H. 557; *Herod* v. *Snyder,* 61 Ind. 453.

(2) The second paragraph of answer is bad for the additional reason that it fails to allege that the payment was made before the certificates were assigned to appellant, and before notice to appellee of such assignment. In this connection it is important to look at and determine the force of

some of the provisions of the statute under which the certificates in suit were issued, for such provisions may be of controlling importance in the discussion of other pleadings in question. The proceedings to establish the gravel road described in the complaint were had under the act of April 8, 1885 (Acts 1885, pp. 162-169). By section nine of the act, after the improvement has been ordered and the assessments confirmed, it is made the duty of the commissioners to appoint a superintendent who shall have charge of the work. He is required to execute a bond, and is made liable thereon by any person aggrieved. By section ten the superintendent is required to let the contract for construction, and the contractor is required to give bond. By section eleven it is made the duty of the superintendent to make assessments on all lands benefited, ratably upon the amount of benefits, etc. He is also required to issue certificates which certify the sum assessed against each tract of land. By this section, also, the superintendent is authorized to give such certificates in payment of any sum due for any labor performed, or to negotiate and sell them at not less than their par value. By this section it is provided that any holder of the certificates, when any instalment becomes due and remains unpaid, may maintain an action thereon. It is also provided that such certificates shall be assignable as promissory notes. The certificates in suit are made payable at the First National Bank of Frankfort, Indiana. By these provisions of the statute, it is plain, from the averments of the complaint, that appellant is legally and rightfully the owner of the certificates in suit, and can successfully maintain an action upon them, unless some valid defense is interposed. The complaint avers that appellant purchased, for a valuable consideration and before maturity, these certificates, and that they were assigned to it. Payment by the appellee of the certificates to the superintendent or contractor, after such purchase and assignment, could not defeat an action for their collection in the hands of the purchaser and holder,

in the absence of an averment which would tender that issue. We are confronted with the fact that they are made by statute assignable "as promissory notes." A note not negotiable by the law merchant may be assigned, and by such assignment the title passes to the assignee, and he may maintain an action for its collection. In such case an answer by the payor that he had paid the note to the original payee would not be good unless it showed that payment was made before the assignment and before he had notice thereof. When a debt is evidenced by a non-negotiable instrument, and the instrument is not produced when the payment is made, such payment is made at the risk of the debtor; and if it turns out that the instrument has been assigned, and is held at the time of payment by another party, the payment is not a valid one, and will not discharge the payor from liability. *Clark* v. *Iglestrom,* 51 How. 407; *Mobley* v. *Ryan,* 14 Ill. 51; *Capps* v. *Gorham,* 14 Ill. 198. We can not indulge any presumption in favor of the answer we are now considering, and are required to construe it most strongly against the pleader. *Nill* v. *Comparet,* 15 Ind. 243; *Helms* v. *Sisk,* 8 Blackf. 503; *Woodward* v. *Elliott,* 13 Ind. 516; Chitty on Bills, 393; Works' Prac. §595, p. 384. From the authorites, and what we have said, the second paragraph of appellee Orr's answer was insufficient to withstand a demurrer for want of facts, and the demurrer should have been sustained.

The amended fourth paragraph of answer, it seems to us, is bad. This paragraph of answer is a special plea of payment, wherein the facts relied upon constituting payment are set out. Appellee Orr there relies upon an alleged contract with the contractor for the construction of that part of the road abutting on his lands, that he would furnish a certain amount of gravel and perform certain labor, which was to be applied in discharge of his assessments. The answer avers that this contract was made in 1886, but fails to specify any particular date. It further avers that appel-

lce complied with the contract; that he furnished gravel and performed labor sufficient to pay his assessments, and that the superintendent concurred therein. It appears from the record that the petition for the road was filed June 9, 1886; that the viewers made their report August 5, 1886; that on said date the commissioners approved said report and confirmed the assessments as made; that they at that time appointed a superintendent and ordered the road constructed. The certificates sued upon bear date of September 10, 1886. It does not appear any place in the amended fourth paragraph of answer when the contract between appellee and Pence was made, except that it was in 1886, nor that it was made before the certificates were issued and assigned, nor that it was made before appellee had notice of such assignment. If appellee paid the certificates or assessment as alleged, it was his duty to secure the certificates at the time of payment, and have the lien created by the assessment against his lands canceled. If he paid them after their assignment to appellant, this paragraph of answer does not state facts constituting a defense.

In *Mobley v. Ryan,* 14 Ill. 51, 56 Am. Dec. 488, it was held that if a debt is evidenced by a non-negotiable instrument, as a bond, and the instrument is not produced when the payment is made, such payment is made at the risk of the payor, and if it turn out that the instrument has been assigned and is held at the time by another party, the payment is not a valid one. In this case appellee permitted these certificates to remain outstanding and uncanceled for ten years after, he alleges, he had paid them. He was bound to know that these certificates were issued, for the law declares it the duty of the superintendent to issue them, and he is presumed to know the law. He is further chargeable with the knowledge that the certificates were assignable, and that the superintendent could negotiate and sell them at par, as was done in this case. Yet appellee remains

silent for over ten years, permits these certificates to go upon the market, is satisfied to let the assessments remain against his lands and uncanceled, and takes no steps to have them canceled until suit is brought to enforce and foreclose the lien.

The authorities cited in support of our conclusion as to the second paragraph of answer apply with equal and even with stronger force here, and with those here cited lead us to hold that the court below erred in overruling the demurrer to the amended fourth paragraph of answer.

As to the first error assigned, the overruling of appellant's demurrer to the cross-complaint of appellee Orr, it is sufficient to say that the facts charged therein are the same as those set up in the amended fourth paragraph of answer. The only material difference between the two is that in the cross-complaint affirmative relief is sought, while in the amended fourth paragraph of answer the facts are pleaded in bar of appellant's right of action. While other objections are urged to the sufficiency of the cross-complaint, those made to the amended fourth paragraph of answer, and which we have already discussed, are applicable to it, and upon the same reasoning and upon the same authorities we must hold the cross-complaint bad as against a demurrer for want of facts, and that it was error to overrule a demurrer to it.

We next come to a consideration of the fourth, fifth, sixth, and seventh specifications of the assignment of errors. The fourth and sixth challenge the action of the court in sustaining appellee's demurrer to the second paragraph of reply to the second and amended fourth paragraphs of the answer of appellee Orr, and also the sustaining of the appellee's demurrer to the third paragraph of reply. The fifth and seventh assail the action of the court in sustaining the appellee's demurrer to the second and third paragraphs of appellant's answer to the cross-complaint. These several pleadings are drawn upon substantially the same facts, and

differ only in phraseology. In each of them appellant seeks to state facts which constitute an estoppel *in pais,* and they all may be considered together.

In the former part of this opinion we have given a *resume* of those several pleadings, and a repetition of them would be useless. Before considering the sufficiency of the several paragraphs, it is important to understand what is ordinarily required to constitute an estoppel *in pais.* Fortunately this question has been fully adjudicated in this State, and the authorities are uniform. To constitute an estoppel *in pais,* the following elements must appeal, viz.: (1) A representation or concealment of material facts; (2) the representation must have been made with a knowledge of the facts; (3) the party to whom the representation was made must have been ignorant of the truth of the matter; (4) the representations must have been made with the intention that the other party should act upon it, and (5) the other party must have been induced thereby to act. *Roberts* v. *Abbott,* 127 Ind. 83; *Kuriger* v. *Joest,* 22 Ind. App. 633. (a) Representation or concealment of material facts. It must be conceded that these pleadings do not show any representation of the material facts, but it is to be remembered that silence, where it is the duty of the party to speak, is equivalent to concealment. *Studdard* v. *Lemmond,* 48 Ga. 100; *Markland, etc., Co.* v. *Kimmel,* 87 Ind. 560; *Jeneson* v. *Jeneson,* 66 Ill. 259; *Griffin* v. *Nichols,* 51 Mich. 575, 17 N. W. 63; *Niven* v. *Belknap,* 2 Johns. (N. Y.) 573; *Cady* v. *Owen,* 34 Vt. 598; *Wheeler* v. *New Brunswick, etc., R. Co.,* 115 U. S. 29, 5 Sup. Ct. 1061. If, therefore, the first element of estoppel is present, it must rest upon concealment of material facts, or silence, which, in law, is concealment, and it must appear that it was the duty of the appellee to speak. Appellee knew that appellant had purchased, was the owner and holder of, and had in its possession the certificates in suit. He knew that appellant believed that it held against his land a valid and subsisting

lien by which it expected to reimburse itself, if necessary, by a foreclosure thereof, for he was repeatedly notified thereof and often requested to pay the amount represented by the certificates and coupons. He even paid the first two coupons to mature, and twice thereafter paid the interest. He knew whether or not he had paid the certificates, or had paid the assessments made against his lands. Under these facts, it was his duty to speak, that appellant might be advised of the situation in which it was placed. This being true, the first element of an equitable estoppel was present, as shown by the pleadings. (b) Again, it fully appears that appellee remained silent, with a full knowledge of the facts that he thus concealed, and hence, the second element of an estoppel was present. (c) The facts charged in these pleadings clearly show that appellant was ignorant of the facts relied upon by appellee as set forth in his cross-complaint and special paragraphs of payment, and hence the third element of estoppel is established. (d) As appellee thus concealed from appellant these material facts, it was necessary for appellant, in its answer to the cross-complaint and its reply to his answer, to aver that his conduct and silence were intended to operate as a delay on its part, and that they were intended that appellant should act upon them. It was also necessary for appellant to aver that it did so delay and act. This it did in full and specific terms, and, by so averring, the answer to the cross-complaint and the paragraphs of reply under consideration are brought within the fourth element of estoppel. (e) Was the appellant induced by the conduct and silence of the appellee to forego its remedy, if it had any, against the superintendent, for the fraud practiced upon it by him in selling and assigning to it certificates which had been paid, and which the superintendent agreed to cancel? If it did, then it acted upon such conduct and silence to its detriment, and if these pleadings show this fact, then we have present the fifth, and all the elements of an equitable estoppel.

As we have seen, the superintendent was required to give bond with freehold sureties, conditioned for the faithful performance of the duties assigned him; he was required to execute certificates against each tract of land; he was authorized to give such certificates in payment for labor performed, to negotiate and sell them, and such certificates were made assignable the same as promissory notes. It is shown that he did all these things required of him by statute, except to pay for labor with them. Under the conditions of his bond he was liable to any person aggrieved for any malfeasance or official misconduct. If he concurred in the contract between appellee and Pence, and if such contract was one which could have been enforced (and as to this question we do not express any opinion), yet it seems clear to us that if the superintendent sold and assigned the certificates to appellant, which had been paid as alleged, and which were to have been surrendered to appellee, such action on the part of the superintendent would have constituted such fraud and official misconduct on his part as would render him liable both personally and upon his official bond for such damages as resulted to appellant therefrom. There can certainly be no doubt as to this proposition, for it finds support both in morals and in law, and is strengthened by equity and common honesty. These facts having been concealed from appellant until any right of action against the superintendent had been lost to it, it is without remedy, unless appellee is estopped to interpose his defense under the facts pleaded.

There is a long line of cases which establishes the rule that a person, by admissions, may be estopped from pleading forgery, and of the many cases so holding we cite the following: *Henry* v. *Heeb*, 114 Ind. 275, 5 Am. St. 613; *Lewis* v. *Hodapp*, 14 Ind. App. 111; *Shisler* v. *Vandike*, 92 Pa. St. 447; *McHugh* v. *County of Schuylkill*, 67 Pa. St. 391; *Workman* v. *Wright*, 33 Ohio St. 405; *Owsley* v. *Philips*, 78 Ky. 517; 2 Randolph on Com. Paper 629. Admissions,

in this connection, are but representations, and as silence, where it is the duty of the party to speak, is equivalent to concealment, and these constitute the first element of estoppel, it follows, both by reason and analogy, that a party may be estopped by conduct where such conduct leads another to act or to refrain from acting, to his detriment. Under the facts pleaded, appellant undoubtedly suffered a change in its relations from refraining from steps which otherwise might and probably would have secured it in its rights as against the superintendent on his bond, as we have seen it could have done. By the conduct of appellee, appellant's relations were changed. In *Kuriger* v. *Joest,* 22 Ind. App. 663, this court said: "As to what is required to constitute a change of relations may be easily determined from authorities. Thus, in *Purviance* v. *Jones,* 120 Ind. 162, it was held that where one is induced to forego his purpose to secure his money before the statute of limitations has barred his claim, by the assurance of the debtor that a note has been signed and delivered to a bank for his benefit, he may, upon the death of the debtor with the note still in his possession, be entitled to compel a delivery, or require it to be treated in an equitable suit as having been delivered as represented. In discussing the question, Mitchell, J., on page 165, said: 'It may be that the evidence was such as to have justified a finding that the note had been delivered to the bank for the plaintiff's benefit; but the fact was not so found. The intestate, having received the plaintiff's money, may have induced him to forego any effort to enforce collection, upon the assurance that a note had been left with the bank, for the amount of the debt, for his benefit. If the plaintiff rested upon that assurance until the statute of limitations had barred the debt, the estate may now be estopped to say that the note was not delivered, as against one who relied upon the statement and who would now suffer actual pecuniary loss if the note, actually signed, was not treated as having been delivered according to the represen-

tations made and relied upon.' " See, also, *Bank* v. *Morgan,* 117 U. S. 96, 6 Sup. Ct. 657.

The supreme court of Texas, in the case of *Weistein* v. *Bank,* 69 Tex. 38, 6 S. W. 171, has stated the rule as follows: "It has been held by this court that when one party has been prevented or induced by the conduct and representations of another from taking prompt action for the collection of his debt, that this is such a change in his position for the worse as to meet the requirement of the law in order to create an estoppel," citing as authority, *Schwarz* v. *Bank,* 67 Tex. 217, 2 S. W. 865.

Herman on Estoppel, Vol. 2, §780, says: "It is not necessary that a party should act affirmatively upon a declaration to create an estoppel. If he had acted not in reliance upon it, but has means in his power to retrieve his position, and, relying upon the statement and in consequence of it he refrains from using these means, the estoppel will be enforced for his benefit."

It has been held that a party may be concluded by inferences which naturally arise from his conduct as well as by express words. *Maxon* v. *Lane,* 124 Ind. 592; *Irvine* v. *Scott,* 85 Ky. 260, 3 S. W. 163; *Pisen* v. *Brown,* 73 Tex. 135, 10 S. W. 661. See, also *Wisehart* v. *Hedrick,* 118 Ind. 341; *May* v. *Council* (Iowa), 39 N. W. 879; *Wise* v. *Newatney,* 26 Neb. 88, 42 N. W. 339.

The question now under discussion was before this court in *Kuriger* v. *Joest,* 22 Ind. App. 663, and many authorities collected bearing upon the point in issue. The conclusion reached in that case, and fully sustained by the authorities, was in harmony with the position assumed by the appellant here, and we content ourselves by referring to that case without further citations to, or quotations from, the authorities.

From the great weight of authorities and upon elementary principles as established by the text-writers, the wholesome and general rule may be deduced that where, by

the conduct or representations of one, another is induced to act, or to refrain from acting, and injury results to him, the party making the representations is therefore estopped from denying the truth of such representations, or, if the injured party acts, or refrains from acting, on the conduct of his adversary, the latter is estopped from relying upon his conduct as a shield or defense. By these authorities we are led to the conclusion that appellant's second paragraph of reply to the second and amended fourth paragraphs of appellee Orr's answer, that appellant's second paragraph of answer to the cross-complaint, that the third paragraph of appellant's reply to the second and amended fourth paragraphs of answer, and the third paragraph of appellant's answer to the cross-complaint, were each sufficient to withstand a demurrer for want of facts, and that it was error to sustain the several demurrers thereto.

Appellee has urged some objections to the complaint, but he has not put himself in a position to have his objections considered, for the reason that he has not assigned cross-error, and, hence, as to the sufficiency of the complaint, and the action of the court in overruling appellee's demurrer thereto, no question is presented by the record.

The Supreme Court, in *Anderson, etc., Assn.* v. *Thompson,* 88 Ind. 405, has put at rest this question, wherein it was held that, where a plaintiff appeals from the judgment below, the defendant, appellee, cannot, as a rule, call in question the sufficiency of the complaint in the Supreme Court, except by the assignment of cross-error presenting that question.

For the reasons given above, the judgment is reversed, and the court below is directed to sustain appellant's demurrer to the cross-complaint of appellee Orr; to sustain appellant's demurrer to the second and amended fourth paragraphs of the answer of appellee Orr; to overrule the demurrer to the amended fourth paragraph of the separate answer of Orr; to overrule the demurrer to the second para-

graph of appellant's reply to the second and amended fourth paragraphs of answer; to overrule the demurrer of the appellee Orr to the second paragraph of answer to his cross-complaint; to overrule the demurrer of appellee to the third paragraph of reply of appellant to the second and amended fourth paragraphs of answer; to overrule the demurrer of appellee Orr to the third paragraph of appellant's answer to the cross-complaint; to grant appellant a new trial, and for further proceedings not inconsistent with this opinion.